UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT PELLETIER

Vs.                                    CA. NO. *05 -30014- MAP*

LOIS RUSSO

### PETITIONER'S MEMORANDUM IN SUPPORT OF HIS PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner, Robert Pelletier, submits this memorandum in support of his Petition for a Writ of Habeas Corpus, challenging the decision of the courts of the Commonwealth of Massachusetts which violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United states Constitution and which requires this court to release him from his unconstitutional confinement by the Commonwealth of Massachusetts.

Respectfully submitted,
by the Petitioner,

Dated: January 10, 2005        *Robert Pelletier*
Robert Pelletier, pro se
Souza-Baranowski Correctional Center
Harvard Road
P.O. Box 8000
Shirley, Massachusetts 01464-8000

i

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ....................... 1

     STATEMENT OF THE FACTS ...................... 3

     TRIAL TESTIMONY OF PATRICIA FERREIRA ........ 3

     TRIAL TESTIMONY OF LUZ FLORES ............... 4

     TRIAL TESTIMONY OF ROBERT PELLETIER ......... 5

     MOTION FOR REQUIRED FINDING ................. 7

     PROSECUTOR'S CLOSING ARGUMENT ............... 8

     JURY INSTRUCTIONS ........................... 10

II.  ARGUMENT .................................... 13

1.   APPELLATE COUNSEL RENDERED, INEFFECTIVE
     ASSISTANCE OF COUNSEL. IN THAT HE FAILED
     TO ARGUE NUMEROUS ISSUES IN THE DEFENDANT'S
     DIRECT APPEAL. .............................. 13

i.   STANDARD OF REVIEW  ......................... 13

ii.  THE FOLLOWING DEFICIENCIES ON THE PART
     OF APPELLATE COUNSEL WERE NOT DUE TO ANY
     STRATEGIC OR TACTICAL REASONS. .............. 14

A.   APPELLATE COUNSE FAILED TO CLAIM THE
     DEFENDANT'S PRE-TRIAL COUNSEL, INEFFECTIVE
     FOR FAILING TO FILE A MOTION TO DISMISS THE
     DEFENDANT'S TWO BREAKING AND ENTERING INDICTMENTS
     ON THE TWO FOLLOWING GROUNDS. ............... 14

i.   DOUBLE JEOPARDY ............................. 14

ii.  FAILURE OF INDICTMENT TO STATE THE
     INTENDED FELONY.  ........................... 16

B.   APPELLATE COUNSEL, FAILED TO ARGUE THAT THE
     DEFENDANT WAS DENIED ADEQUATE NOTICE OF THE
     CHARGES AGAINST HIM. WHERE THE INDICTMENTS
     DID NOT SPECIFY, THE INTENDED FELONY TO BE
     COMMITTED. .................................. 22

C.   APPELLATE COUNSEL FAILED TO ARGUE THAT THE TRIAL
     COURT ERRED, IN DENYING THE DEFENDANT'S MOTION
     FOR A REQUIRED FINDING OF NOT GUILTY. AT THE CLOSE
     OF THE COMMONWEALTH'S CASE AND AT THE CLOSE OF
     ALL THE EVIDENCE. ........................... 26

D.    APPELLATE COUNSEL FAILED TO ARGUE NUMEROUS,
      IMPROPER STATEMENTS MADE BY THE PROSECUTOR
      IN HER CLOSING ARGUMENT TO THE JURY. ........ 36

E.    APPELLATE COUNSEL FAILED, IN THAT HE DID
      NOT ARGUE THAT THE TRIAL JUDGE IMPERMISSIBLE
      CONSTRUCTIVELY AMENDED AND BROADENED. THE
      PETITIONERS TWO BREAKING AND ENTERING
      INDICTMENTS.  ............................. 41

2.    THE EVIDENCE INTRODUCED AT TRIAL WAS
      INSUFFICIENT TO SUSTAIN THE GUILTY VERDICT.
      RETRIAL IS BARRED, BY THE PRINCIPLES OF
      DOUBLE JEOPARDY, UNDER THE FIFTH AND FOURTEENTH
      AMENDMENTS TO THE UNITED STATES CONSTITUTION..45

      CONCLUSION ................................. 47

**TABLE OF AUTHRORITIES**

**Supreme Court Cases:**

Brown v. Ohio,
    432 U.S. 161 (1977) ....................... 15

Burks v. United States,
    437 U.S. 1 (1978) ......................... 46

Donnelly v. DeChistoforo,
    416 U.S. 637 (1974) ....................... 37

Evitts v. Lucey,
    469 U.S. 387 (1985) ....................... 13

Ex Parte Bain,
    121 U.S. 1 (1887) ......................... 44

Ex parte Lange,
    18 Wall 163 (1874) ........................ 14

Greer v. Miller,
    483 U.S. 756 (1987) ....................... 40

Hamling v. United States,
    418 U.S. 87 (1974) ........................ 17,22

Helvering v. Mitchell,
    303 U.S. 391 (1938) ....................... 15

In re Snow,
    120 U.S. 274 (1887) ....................... 15

In re Winship,
    397 U.S. 358 (1970) ....................... 17

Jackson v. Virginia,
    443 U.S. 307 (1979) ....................... 27,45

Jones v. United States,
    526 U.S. 227 (1999) ....................... 17

Monge v. California,
    524 U.S. 721 (1998) ....................... 46

Patterson v. New York,
    432 U.S. 197 (1977) ....................... 45

Price v. Georgia,
    398 U.S. 323 (1970) ....................... 15

Rose v. Lundy,
    455 U.S. 509 (1982) ....................... 16,17

Russell v. United States,
    369 U.S. 749 (1962) ...................... 17,22,44

Schiro v. Farley,
    510 U.S. 222 (1994) ...................... 14

Smalis v. Peesylvannia,
    476 U.S. 140 (1986) ...................... 46

Stirone v. United States,
    361 U.S. 212 (1960) ...................... 44

Strickland v. Washington,
    466 U.S. 668 (1984) ...................... 13

United States v. Cronic,
    466 U.S. 648 (1984) ...................... 13

United States v. Dixon,
    509 U.S. 688 (1993) ...................... 14

United States v. Miller,
    471 U.S. 130 (1985) ...................... 44

**Federal Appeals Court Cases:**

United States v. Balsam,
    203 F.3d 72 (C.A.1(Mass.)2000) ........... 37

United States v. McDonough,
    959 F.2d 1137 (1st Cir. 1992) ............ 17

**Massachusetts State Cases:**

Brown v. Commonwealth,
    407 Mass. 84 (1990) ...................... 34

Commonwealth v. Armand,
    411 Mass. 167 (1991) ..................... 34

Commomwealth v. Assad,
    19 Mass.App.Ct. 1007 (1985) .............. 33

Commonwealth v. Burns,
    8 Mass.App.Ct. 194 (1979) ................ 23

Commonwealth v. Claudio,
    418 Mass. 103 (1994) ..................... 28

Commonwealth v. Cobb,
    374 Mass. 512 (1978) ..................... 40

Commonwealth v. Conner,
    392 Mass. 838 (1984) ..................... 40

Commonwealth v. Cordle,
    404 Mass. 733 (1989) ...................... 36

Commonwealth v. Cruz,
    430 Mass. 182 (1999) ...................... 18

Commonwealth V. Daggett,
    416 Mass. 347 (1993) ...................... 36

Commonwealth v. Ferguson,
    384 Mass. 13 (1981) ...................... 34,35

Commonwealth v. Gordon,
    42 Mass.App.Ct. 601 (1997) ............... 15

Commonwealth v. Gosselin,
    365 Mass. 116 (1974) ...................... 25

Commonwealth v. Hare,
    361 Mass. 263 (1972) ...................... 23

Commonwealth v. Hill,
    57 Mass.App.Ct. 240 (2003) ............... 43,45

Commonwealth v. Kozec,
    399 Mass. 514 (1987) ...................... 39

Commonwealth v. Latimore,
    378 Mass. 671 (1979) ...................... 27,28

Commonwealth v. Lewis,
    346 Mass. 373 (1963) ...................... 20,24,25,28,33

Commonwealth v. Lauzier,
    53 Mass.App.Ct. 626 (2002) ............... 18

Commonwealth v. Merola,
    405 Mass. 529 (1989) ...................... 35

Commonwealth v. Myers,
    356 Mass. 343 (1969) ...................... 21

Commonwealth v. O'Brien,
    305 Mass. 393 (1940) ...................... 34

Commonwealth v. Paradise,
    405 Mass. 141 (1989) ...................... 39

Commonwealth v. Porcher,
    26 Mass.App.Ct. 517 (1988) ............... 19,24,25

Commonwealth v. Randell,
    50 Mass.App.Ct. 26 (2000) ............... 19

Commonwealth v. Randolph,
     415 Mass. 364 (1993) ...................... 21

Commonwealth v. Ronchetti,
     415 Mass. 78 (1955) ...................... 19,30

Commonwealth v. Santiago,
     425 Mass. 347 (1993) ...................... 36

Commonwealth v. Scand,
     420 Mass. 783 (1995) ...................... 33,34

Commonwealth v. Silva,
     401 Mass. 318 (1987) ...................... 40,41

Commonwealth v. Smith,
     37 Mass.App.Ct. 10 (1994) ................. 21

Commonwealth v. Steward,
     411 Mass. 345 (1991) ...................... 29,32

Commonwealth v. Stoddard,
     38 Mass.App.Ct. 45 (1995) ................. 28,29

Commonwealth v. Vinnicombe,
     28 Mass.App.Ct. 934 (1990) ............... 42

Commonwealth v. Wainio,
     1 Mass.App.Ct. 866 (1974) ................. 20,24,25

Commonwealth v. Walter,
     40 Mass.App.Ct. 907 (1996) ............... 42,45

Commonwealth v. Willard,
     53 Mass.App.Ct. 650 (2002) ............... 16,18,19,21,24,25

Commonwealth v. Wilson,
     42 Mass. 336 (1998) ...................... 37

Rogan v. Commonwealth,
     415 Mass. 376 (1993) ...................... 19,20

**OTHER AUTHORITIES:**

United States Constitution,
     Art. VI cl. 2. ........................... 16

United States Constitution,
     Fifth Amendment .......................... 14,16,17,22,44,45

United States Constitution,
     Sixth Amendment .......................... 13,16,17,22

United states Constitution,
    Fourteenth Amendment ....................... 13,45

Mass.G.L. c. 266 § 15 ......................... 19

Mass.G.L. c. 266 § 18 ......................... 16,24,43

Mass.G.L. c. 266 § 30 ......................... 42,43

Mass.G.L. c. 277 § 79 ......................... 20

Mass.R.Crim.P., rule 13(b)(1) .................. 20

I.

## STATEMENT OF THE CASE

In November 1998, a Hampden County Grand Jury returned three indictments against the defendant. See (RA. 1-3).[1] Indictments #98-2391 and 98-2392, each charged the defendant with breaking and entering a dwelling in the daytime with intent to commit a felony. Indictment #98-2393, charged the defendant with possessing an implement adapted and designed for breaking open a building with the knowledge of its purpose, and with the intention of using it.

On November 30, 1998, the defendant was arraigned in the Superior Court. Attorney Donald Frank, was appointed by the Court to represent the defendant. Attorney Frank filed a pre-trial motion to suppress evidence and later by request of the defendant, a motion for a bill of particulars.

On March 26, 1999, the defendant dismissed Attorney Frank and proceeded pro se. Attorney David Gagne was appointed as stand-by counsel to assist the defendant. Following the hearing on the motion to suppress, the motion was denied, and an oral opinion issued from the bench.

---

[1] The record appendix is referred to throughout by the abbreviation "RA". The trial transcript is referred to by the abbreviation "TR". Followed by the relevant volume and page number.

1

The matter came for trial before McDonald, J., and a jury on April 16, 1999. The defendant, acting pro se, with the assistance of William O'Neil, as stand-by counsel. The Commonwealth presented testimony from six witnesses, four of whom were police officers. The defendant moved for a directed verdict at the close of the Commonwealth's case, based upon the Commonwealth's failure to show an actual break-in and the failure to demonstrate specific intent to commit a larceny. That motion was denied.

The trial lasted two days. at its conclusion the jury returned a verdict of guilty on all three counts. Following an April 27, 1999, sentencing hearing, the defendant received concurrent sentences of 7 years to 10 years on indictments #98-2391 and 98-2392. Indictment #98-2393, was placed on file with the defendant's consent.

A Notice of Appeal, was timely filed on May 21, 1999. In the month of September, 1999, the Committee for Public Counsel Services, appointed Attorney David Dubinsky, to represent the defendant in his direct appeal. Attorney Dubinsky, argued two issues, the illegale seizure and search of the defendant. The Appeals Court affirmed the defendant's appeal. See Commonwealth v. Pelletier, Appeals Court No. 99-P-2171, further appellate review was denied on April 30, 2002. The defendant filed a new trial motion

2

on August 28, 2002. On October 20, 2003, the Court
denied the defendant's new trial motion. On October
31, 2003, the defendant filed a notice of appeal. The
Appeals Court, denied the defendant's appeal on
November 5, 2004. The defendant did not seek a
rehearing in the Appeals Court. The defendant filed an
Application for Further Appellate Review. The
Application was

### STATEMENT OF THE FACTS

### i.   THE TRIAL TESTIMONY OF PATRICIA FERREIRA

Patricia Ferreira lives at 65 Sycamore Street,
Holyoke, Massachusetts, and is employed by the Holyoke
Public School system. (TR. 1:66-67) On October 9, 1998
Ms. Ferreira contacted the police when she observed
someone she did not recognize in the yard of her
neighbor, Luz Flores. (TR. 1:66-67) Luz Flores lives
at 63 Sycamore Street. (TR. 1:66-67)

Ms. Ferreira testified that she was on
administration leave, and was returning home from
grocery shopping at about noon on October 9, 1998.
(TR. 1:67-68) While unloading the groceries from her
trunk she heard her neighbor's front porch door
squeak. (TR. 1:67-68) When she looked in that
direction she saw a man, whom she later identified as
the defendant, exiting the front porch of 63 Sycamore
Street and going into the sideyard. (TR. 1:68-71)
When the defendant exited the front porch, "he

3

looked at Ms. Ferreira, and she looked at the defendant." So that, they both saw one another. (TR. 1:77) She continued to unload her groceries, making several trips to and from her car, but did not observe the defendant again untill she saw him walk out of Ms. Flores's sideyard, and begin to walk up Sycamore Street. (TR. 1:68-71)

Ms. Ferreira did not actually observe the defendant in Ms. Flores's backyard. (TR. 1:76) she did not observe the defendant near any of the windows which allegedly served as attempted points of entry, and did not observe him entering the porch. (TR. 1:77)

The police arrived twenty to thirty minutes after Ms. Ferreira called to report her observations. (TR. 1:70-75) The police knocked at her door, asked her to assist in identifying the individual and directed her attention to the police cruiser. (TR. 1:75) when she looked in that direction she saw the defendant running up Sycamore Street and said "that's him." (TR. 1:75) The officers commenced pursuit. (TR. 1:75-76)

### ii   THE TRIAL TESTIMONY OF LUZ FLORES

Luz Flores resides at 63 Sycamore Street. (TR. 1:128) She testified that her house was locked and secured when she left for work on October 9, 1998. (TR. 1:128-129) She walked around the house with a police officer, and observed damage to several

4

windows and doors, consistent with the testimony
provided by officer Saj. She testified that the damage
to the house was fresh, but that nothing was "stolen."
(TR. 1:128-137, 139)

### iii.  THE TRIAL TESTIMONY OF ROBERT PELLETIER

After running several errands, the defendant
found himself on Sycamore Street. (TR. 1:157)
Remembering a girl he used to know when he lived in
Holyoke 16 or 17 years earlier, who lived at 63
Sycamore Street, he went on the porch to look at the
mailbox, and try to determine whether she still lived
there. (TR. 1:157) Unable to find a name on the box,
and having felt ill all day, he went to the side of
the house and vomited. (TR. 1:156-157) Continuing to
walk down Sycamore Street, he decided to try to visit
Danial Sullivan, whom he had heard moved back to his
family's house at 40 Sycamore Street, after his
father's death. (TR. 1:157)

As he left 40 Sycamore Street, Officer Wagner
pulled along side of him in a police cruiser. (TR.
1:158) Officer Wagner asked him for identification,
and asked him where he lived. (TR. 1:158) The
defendant produced an identification card, and told
Officer wagner that he lived at 309 Walnut Street, and
that he stoped tosee a friend, whose father had just
died, was at home. (TR. 1:158, 163, 176-177) Officer
Wagner told the defendant to get against the car and

5

conducted a pat frisk. (TR. 1:158-159) The search revealed a knife and screwdriver in his back pocket. (TR. 1:158-159, 165)

Officer Wagner was then joined by Officer Saj. (TR. 1:159, 162-167) While Officer Wagner went to examine 63 Sycamore Street, Officer Saj asked the defendant to get in the back of the cruiser. (TR. 1: 159, 166-172) When the Quarry check revealed that the defendant had an extensive criminal history, Officer Saj stated "I know who you are" and "your going down." (TR. 1:159, 166-172) a heated argument ensued. (TR. 1:159)

The defendant remained in the cruiser for 40 to 45 minutes while Officer Wagner examined 63 Sycamore Street for signs of a break-in. (TR. 1:159-160) When Officer Wagner returned to the cruiser he stated that the damage "looks old, but I'm not sure. Lets call the homepwner." (TR. 1:172) The homeowner, Ms. Flores, arrived a half hour later. (TR. 1:172-173) She examined the front porch and told the officer's that the damage was preexisting. (TR. 1:160, 173-174) After speaking with Ms. Flores, Officer Saj looked directly at the defendant and smiled. (TR. 1:160) As Officer Saj turned back towards the house to speak with Ms. Ferreira, the defendant rolled down the cruiser window opened the door, and ran. (TR. 1:160, 175) The officers quickly apprehanded the defendant, who had

6

bronchitis. (TR. 1:160)

### iv.   MOTION FOR A REQUIRED FINDING AT THE CLOSE OF THE COMMONWEALTH'S CASE

The defendant filed a motion for a required finding of not guilty, at the close of the Commonwealth's case. (TR. 1:148) The defendant, renewed the motion at the close of all the evidence. (TR. 1:195-196) The defendant argued that the Commonwealth failed to prove that the defendant broke or stole anything, (TR. 1:148) and that the elements of the charge were not proven. (TR. 1:148)

The prosecutor argued, that because of the damage that occured, there was enough evidence with respect to the possession of burglarious tools. (TR. 1:150) The Court then asked the prosecutor, "what about the intent?" (TR. 1:150) The prosecutor responded, the intent to commit a felony, the fact that there isn't a larceny inside, nor is the Commonwealth obligated to show what the felony would be, but the fact that there was a breaking into this general area would indicate that he's trying to get into the house and it's reasonable to infer -- and I believe there's cases that I don't have cited right here that -- that it's reasonable to infer that he had -- breaking into the house to steal, to burglarize the house, and thats why he's trying to get in all various ways. So that -- that is not a stretch of the imagination. Although the

7

Commonwealth is not required to show what the felony
would be inside, it's a very strong, reasonable
inference that it was to commit a larceny therein.

You've heard testimony from the owner of the
house that she had a dog inside the house, and I
would suggest that -- that's why there was not a
continued larceny into the house, but also, don't
forget, the neighbor comes home and he leaves a
short time later. So between the coming in the house
and the neighbor coming home, that there's some
reasonable understanding why he would not stick around
to actually burglarize the house. (TR. 1:150-151)

The Court, then gave it's decision. Well, I'm
satisfied at this stage, Mr. Pelletier, where I must
draw all inferences favorable to the prosecution, that
the evidence is sufficient to withstand your motion.
(TR. 1:150-151)

### v.    PROSECUTOR'S CLOSING ARGUMENT

The prosecutor opened her argument, by explaining
the duty of the jury, and what evidence is. (TR. 2:17)
What the witness Patricia Ferreira, testified to
That she came home, that the defendant had already
been there. That she saw the defendant come off the
front porch and enter her neighbor's backyard.
(TR. 2:18) What constitutes the offence of breaking
and entering and she suggested that the intent was to
commit a larceny. (TR. 2:18) That the jury did not

8

hear evidence of anything being taken but that the
jury was to use there "common sence" as to the intent.
(TR. 2:19) The prosecutor then went on to incorrectly
state, and then to infer, that the defendant was
lying during his testimony. "So I suggest to you if
the defendant was simply on the side of the house
vomiting because he didn't want to do this in front
of the lady that she would have, I suggest to you,
quite possibly have seen him." (TR. 2:19)

The prosecutor, then went on to incorrectly
mistate what Ms. Ferreira testified to. "She said
once you get back to the cellar area she cannot see."
(TR. 2:19) At this point the defendant objected. The
Court, in open court, stated, "Mr. Pelletier, it's
inappropriate to object during the closing argument.
If you have an objection you can address it to me
after the arguments are complated." (TR. 2:20)

The prosecutor, immediately repeated incorrectly,
Ms. Ferreira's testimony. "But the area she told you
she coulsn't see was right in the back cellar area."
"And you heard the defendant was back there for
approximately five minutes." (TR. 2:20) The prosecutor
continued and then finished her closing. (TR. 2:20-31)
The Court then heard the defendant's objection, that
the prosecutor mistated the evidence. (TR. 2:31) The
Court then informed the defendant, "that's a matter
for the jury", "their recollection of the evidence",

9

"their recollection of the evidence will control
there." (TR. 2:31)

### vi.   THE COURT'S JURY INSTRUCTIONS ON BREAKING AND ENTERING WITH INTENT TO COMMIT A FELONY

The Court described the three elements to the
offence of breaking and entering. "Frist, that the
defendant broke into a building belonging to another;
second, that the defendant entered the building; and;
third, that when doing so the defendant had the intent
had the intent to commit a felony." (TR. 2:44) the
Court then went on to describe the three elements in
greater detail. (TR. 2:44)

First, that the defendant broke into a building
belonging to another. Now, a break-in involves some
excertion of physical force, even slight force, to
remove an obstruction and to gain entry. There need
not be the breaking of an object. a break-in may be
as simple as moving an object which bars entry, for
example, a break-in is committed when there is a
breaking of a window or kicking down of a door; but
it may also be committed if it involves opening of
a closed window or moving of plywood leaning over an
entry or going in a window not intended as an
entrance. Going through an unobstructed entrance is
not breaking.

The second element requires proof of entry,
"entry" means the unlawful making of one's way into a

10

building. This is phyical entry by any portion of the
defendant's body or by any portion of an instrument or
a weapon controled by the defendant.

The third element is proof that when the defendant
committed such actions, he had in mind the commission
of the the offence, here of larceny; that is that he
thought prior to his action. This thought may be brief
but it requires proof that the defendant had some
concertration or focusing of his mind, that it was a
conscious act and not a reflex.

"Intent" means state of mind. It means objection
or purpose. in our everyday affairs, we judge the
intent and the state of mind of others; and we may
infer intent from a person's actions and words. We
may infer intent from all of the surrounding
circumstances. It's reasonable to infer that a
person intends the natural and probable consequences
of acts that are done intentionally, unless there's
evidence that convinces you otherwise. (TR. 2:44-46)

There are three elements to the offence
of larceny. the first is that the defendant took
and carried away; second, property that was owned
and possessed by someone else; third, that it was
done with the intent to deprive that person
permanently of the property. (TR. 2:47)

Now, "to take and carry away" means to
physically transfer property from one person's

control to another without the consent of, or knowledge of, that person. Such transfer may be by only slight movement and may be only a short time. It's a transfer of control which is important, not necessarily a transfer of location.

In order to satisfy the element of taking and carrying away, it must be proved that there was an intent to take away without justification and without consent.

Second, the property was owned and possessed by someone else. These words have their ordinary meaning. The Commonwealth must prove that someone else owned the property in question.

And, third, that the taking was with the specific intent to deprive the owner permanently. again, intent is a state of mind, but what it means is that the defendant had in mind to do a particular act. This proof may be by indirect, that is, circumstantial evidence. Infer the defendant's intent from words or action. (TR. 2:47-48)

Now, here, of course, there was not evidence that there was actully a larceny; but, rather, what the commonwealth must prove beyond a reasonable doubt is that there was a breaking and entering and a possession of burglarious tools with the intent to commit a larceny, whether or not that intent was fulfilled. (TR. 2:48)

12

II.

## ARGUMENT

1. **APPELLATE COUNSEL RENDERED, INEFFECTIVE ASSISTANCE OF COUNSEL. IN THAT HE FAILED TO ARGUE NUMEROUS ISSUES IN THE DEFENDANT'S DIRECT APPEAL.**

### i. STANDARD OF REVIEW:

Strickland v. Washington, 466 U.S. 668 (1984), states the two prongs of the Federal test under the Sixth and Fourteenth Amendments to the United States Constitution. First, a "defendant must show that counsel's representation fell below an objective standard of reasonableness", which is measured, in part, according to prevailing professional norms. Id. at 687-688. Second, defendant "must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would of been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "The type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole -- specific errors and omissions may be the focus of a claim of ineffective assistance of counsel as well." United States v. Cronic, 466 U.S. 648, 657 (1984), citing Strickland v. Washington, supra, at 693-696. This right to effective assistance of counsel extends to require such assistance on "direct appeal" of a criminal conviction. See Evitts v. Lucey, 469

U.S. 387, 396 (1985).

### ii.    THE FOLLOWING DEFICIENCIES ON THE PART OF APPELLATE COUNSEL WERE NOT DUE TO ANY STRATEGIC OR TACTICAL REASONS

A.    APPELLATE COUNSEL FAILED TO CLAIM THE DEFENDANT'S PRE-TRIAL COUNSEL, INEFFECTIVE, FOR FAILING TO FILE A MOTION TO DISMISS THE DEFENDANT'S TWO BREAKING AND ENTERING INDICTMENT'S. ON THE TWO FOLLOWING GROUNDS.

**BACKGROUND:**

In the present case, both of the petitioner's indictments, numbered, (98-2391) and (98-2392), charging the petitioner with (Breaking and Entering in the Daytime, with intent to commit a felony, G.L. c. 266 § 18, are identical.) See "RA" 1, 2.

### i.    DOUBLE JEOPARDY:

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." United States Constitution, Amendment Five. The Supreme Court has explained that "the Clause serves the function of preventing both successive punishment and successive prosecution," United States v. Dixon, 509 U.S. 688, 704 (1993), and that "the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." Ex parte Lange, 18 Wall. 163. 173 (1874). See also Schiro v. Farley, 510 U.S. 222, 229-230 (1994).

Significantly, the language of the Double Jeopardy Clause protects against more than the actual imposition

of two punishments for the same offence; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment. See Price v. Georgia, 398 U.S. 323, 326 (1970). That is, the Double jeopardy Clause "prohibits merely punishing twice or attempting a second time to punish criminally, for the same offence." Helvering v. Mitchell, 303 U.S. 391, 399 (1938). The Double Jeopardy Clause also prevents a State from convicting a defendant twice simply by dividing a single continuing offence into two separate offences. See In re Snow, 120 U.S. 274 (1887). See also Brown v. Ohio, 432 U.S. 161, 169 (1977) ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutor's can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.")

"When two or more separate indictments allege the same offence, they are duplicative and all but one indictment must be dismissed. Even if a defendant receives concurrent sentences on the duplicative indictments, his conviction on all but one of the indictments must be vacated." Commonwealth v. Gordon, 42 Mass.App.Ct. 601, 602-603 (1997). In this case the defendant did not raise the issue at trial. "However, a defendant sentenced twice for the same crime is entitled to relief on appeal despite failing to preserve his appellate rights at his trial." Id. at n. 2.

15

The Massachusetts Courts, refused to even consider the petitioners argument, on this point.

### ii.  FAILURE OF BREAKING AND ENTERING INDICTMENT, TO STATE THE INTENDED FELONY:

The Massachusetts Courts reliance upon, Commonwealth v. Willard, 53 Mass.App.Ct 650, 656 (2002). For their conclusion, that the Commonwealth is not obligated to inform the defendant, what the particular felony is, in a indictment charging (Breaking and Entering with intent to commit a felony, G.L. c. 266 § 18.) Is inconsistent with the United states Constitution. See Fifth Amendment, "No person shall be held to answer for a capitol, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Also see, Sixth Amendment, "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation."

The United States, is a Federal Republic, conceived on the priciple of a supreme federal power and constituted first and foremost of citizens, not of sovereign States. The citizens expressly declared: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. "Under our federal system, the federal and state 'courts [are] equally bound to guard and protect the rights secured by this Constitution.'" Rose v.

Lundy, 455 U.S. 509, 518 (1982).

Under the Fifth and Sixth Amendments to the United states Constitution. The indictment is the charging instrument that apprises the accused of the charges against him so he may adequately prepare his defense, and to describle the crime with which he is charged with sufficient specificity to enable him to protect against future jeopardy for the same offence. See Russell v. United States, 369 U.S. 749, 763-764 (1962). In general,"an indictment is sufficient if it, first, contains the elements of the offence charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offence." Hamling v. United States, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offence in the words of the statute itself, as long as 'those words of themselfs fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitue the offence intended to be punished.'" Id (citations omitted); see also United States v. McDonough, 959 F.2d 1137, 1140 (1st Cir.1992). "Elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." Jones v. United states, 526 U.S. 227, 230 (1999); In re Winship, 397 U.S. 358, 369 (1970).

17

The Massachusetts Courts citing of <u>Commonwealth v.</u>
<u>Willard</u>, 53 Mass.App.Ct. 650, 656 (2002). In denying
this issue, in the defendant's appeal. Is also
inconsistent with their own caselaw. See <u>Commonwealth</u>
<u>v. Lauzier</u>, 53 Mass.App.Ct. 626, 629 (2002) ("Where,
as here, there were separate indictments for the
felonies that were potentially also predicates for the
breaking and entering indictment, that indictment need
not have particularzied the specific felony which the
defendant is alleged to have intended to commit at the
time of the break-in.")  <u>Lauzier</u>, was decided six days
prior to the decision in <u>Willard</u>. [Note, that the
petitioner was not indicted separately for "any"
underlying felony].  The Court in <u>Lauzier</u>, correctly,
based its conclusion upon <u>Commonwealth v. Cruz</u>, 430
Mass. 182, 189 (1999). A case which involved an
indictment of first degree, felony murder. ("Here
there were separate indictments on all potential
underlying felony counts.") <u>Id</u>, at 189. At this point,
it should be noted that the judge, that wrote the
opinion in <u>Lauzier</u>, also sat on the panel, that
reviewed this argument.

If the judge, that wrote the decision in <u>Willard</u>,
had read the underlying caselaw, he used to support
<u>Willard</u> with. He would of realized that his conclusions,
were lacking in factual support. The judge in <u>Willard</u>,
stated, "[t]o prove a defendant guilty of burglary

18

support the above-stated conclusion, <u>Commonwealth v.</u>
<u>Wainio</u>, 1 Mass.App.Ct. 866 (1974). <u>Wainio</u> argued, that
the complaint was deficient, because it failed to
comply with G.L. c. 277 § 79. (Application of annexed
forms; schedule). See <u>Wainio</u> at 867. <u>Wainio</u>, supposedly
relied upon, <u>Commonwealth v. Lewis</u>, 346 Mass. 373,
377-378 (1963). For the proposition that if a defendant,
"wished to be apprised of a particular felony intended
to be committed ... he should have availed himself of
the remedy ... of a motion for a bill of particulars."
<u>Wainio</u> at 867. The problem is, that if anyone takes the
time to actually read <u>Commonwealth v. Lewis</u>, at 377-378.
They would know that the discussion at those pages,
concerns the defendant's motion for a directed verdict.
There is no discussion in <u>Lewis</u>, of the defendant filing,
a bill of particulars. Why the Court, would write what
they did in <u>Wainio</u>, is beyond my comprehension and is
clearly an error.

The defendant's attorney in <u>Rogan</u>, opted to file
a bill of particulars, pursuant to Mass.R.Crim.P., rule
13(b)(1). In able to be informed of the felony, intended
to be committed, concerning the breaking and entering
indictment. It was <u>Rogan's</u> attorney's choice. He could
of very well of filed, a motion to dismiss. On Federal
Constitutional grounds.

The judge in <u>Willard</u>, finish's the issue, with the
following. "Where a particular felony is specified

either in the indictment or the judge's instruction, "the allegation of the specific felony ... [is] mere surplusage and unnecessary to describe the crime,". Willard, at 653, citing Commonwealth v. Randolph, 415 Mass. 364, 367 (1993).

Randolph, was indicted for "armed assault in a dwelling, with the intent to commit a felony, to wit: murder." Id. at 367. The Court instructed the jury, that they could find the defendant guilty on the indictment, if they found the defendant had an intent to commit either murder or assault and battery by means of a dangerous weapon. The Court found the assault and battery language mere surplasage. The case does not state, whether Randolph, requested a lesser included offence instruction, of assault and battery by means of a dangerous weapon. It is a well established principle that assault and battery is considered a lesser included offence of the crime of murder. See Commonwealth v. Myers, 356 Mass. 343, 350 n.1 (1969); Commonwealth v. Smith, 37 Mass.App.Ct. 10, 13 (1994). Whatever was the case, Randolph, was indicted correctly. The indictment stated the underlying felony, which was, to wit, "murder". With the assault and battery language, being simply a permisible variance, to the indictment.

The Massachusetts Court's decision in this matter, is contrary to clearly established Federal Law.

21

B.   APPELLATE COUNSEL, FAILED TO ARGUE THAT THE
     DEFENDANT WAS DENIED ADEQUATE NOTICE OF THE
     CHARGES AGAINST HIM. WHERE THE INDICTMENTS
     DID NOT SPECIFY, THE INTENDED FELONY TO BE
     COMMITTED.

The defendant's two separate breaking and entering

indictments, were identical and stated the following:

> "[Robert Pelletier] defendant herein, of Holyoke
> in the County of Hampden, on or about October 9,
> 1998, at Holyoke in the County of Hampden, did
> break and enter in the daytime the dwelling house
> of Luz Flores situated in said Holyoke, in said
> County, with intent therein to commit a felony."

The indictment is the charging instrument that apprise

the accused of the charges against him, so he may

adequately prepare his defense, and to describe the

crime with which he is charged with sufficient

specificity to enable him to protect against future

jeopardy for the same offence. See Russell v. United

States, 369 U.S. 749, 763-764 (1962). In general, "an

indictment is sufficient if it specifies the element

of the offence charged, fairly apprises the defendant

of the charges against which he must defend, and allows

him to contest it without fear of double jeopardy."

Hamling v. United States, 418 U.S. 87, 117 (1974).

See also, U.S. Const. amend. V, ("No person shall be

held to answer for a capitol, or otherwise infamous

crime, unless on a presentment or indictment of a

Grand Jury."); U.S. Const. amend. VI, ("In all criminal

prosecutions, the accused shall enjoy the right ...

to be informed of the nature and cause of the

22

accusation.") No evidence was presented to the Grand
Jury of any felony being committed, once the house was
broken into. Only evidence of damage done to doors,
from the breaking and possible entry. See "RA" at
33-49 On January 29, 1999, two and one half months,
prior to trial. The defendant filed a motion for a
bill of particulars. See "RA" at 32. A bill of
particulars was never provided to the defendant. See
"RA" at 4,5. The specific felony was never defined,
nor was the defendant told prior to trial what felony
he was being charged with. He was never notified of a
specific felony that he was alleged to have intended
to commit, while allegedly breaking into 63 Sycamore
Street.

The primary "purpose of bill of particulars is to
describe in more detail that which is included in
allegations of indictment in order that defendant may
be fully informed of nature of charge and be enabled
to prepare an adequate defense." Commonwealth v. Hare,
361 Mass. 263, 371 (1972) "However, a bill of particulars
cannot creat or cure a defect in an indictment." Id at
n.9. See also Commonwealth v. Burns, 8 Mass.App.Ct. 194,
198 (1979) ("The bill of particulars will set out in
detail that which is included in the allegations of an
indictment. It cannot enlarge the scope of an indictment
to include an offence not charged therein.")

The State of Massachusetts, relied upon Commonwealth

23

v. Willard, 53 Mass.App.Ct. 650 (2002). To deny the
defendant's argument, that his pre-trial attorney
should of filed a motion to dismiss. On the grounds,
that the indictment failed to specify the felony. In
the breaking and entering indicments. The Court, gave
as its reasoning, the following. "A burglary indictment
need not specify the intended felony by name, as the
identity of the felony is not an element of the crime
and the jury can find an intent to commit an unspecified
felony." Id at 653. The Court in Willard, cite's to
Commonwealth v. Porcher, 26 Mass.App.Ct. 517, 521 (1988),
for that statement of law. The Court in Porcher, in turn,
states "if a defendant wants that kind of information,
he should move for a bill of particulars." Citing
Commonwealth v. Wainio, 1 Mass.App.Ct. 866, 867 (1974),
and Commonwealth v. Lewis, 346 Mass. 373, 377-378 (1964).
(Commonwealth v. Wainio, cite's to Commonwealth v.
Lewis). The problem with these line of cases is, that
Lewis, was indicted correctly. See at Lewis, supra, at
376. ("The defendant was convicted on an indictment
which charged that on Auguast 28, 1961. 'in the daytime
[he] did break and enter the *** dwelling house of
John Scanlon *** with intent therein to commit larceny.'
G.L. c. 266 § 18.") At know point does Lewis, discuss
a bill of particulars. The discussion at pages 377-378,
in Lewis, concerns a motion for a directed verdict.
How the Court in Wainio, came to its conclusion in

24

citing to <u>Lewis</u>, is beyond my understanding, except to say, its clearly an error. A case which is closely on point and was reviewed by the Supreme Judicial Court, shortly after <u>Wainio</u>. (<u>Wainio</u> was an Appeals Court decision, that was not reviewed by the Supreme Judicial Court). Is <u>Commonwealth v. Gosselin</u>, 365 Mass. 116, 121-122 (1974) ("A charge of an attempt should set forth in direct terms that the defendant attempted to commit the crime, and should allege the act or acts done toward its commission. ... The verdict necessarily implies a finding of **intent** to escape, but it carries no implication of a finding of a sufficient overt act other than the completed escape. ... Even if there were such an implication, it would not cure the omission of an allegation of the overt act found. ... The defendant could not be convicted of an attempt under a complaint lacking an allegation essential to the crime proved.")

Even if the Court, were to decide that <u>Willard</u>, citing to <u>Porcher</u>, is the correct statement of law. The State of Massachusetts, still failed to provide the petitioner, with a bill of particulars. Thereby, failing to provide the petitioner notice of the charges against him. The State of Massachusetts, also failed to even review this issue in the petitioners appellate brief. The Massachusetts Court's action's in this matter, are contrary to clearly estabished Federal law.

25

C.    APPELLATE COUNSEL FAILED TO ARGUE THAT THE TRIAL
      COURT ERRED, IN DENYING THE DEFENDANT'S MOTION
      FOR A REQUIRED FINDING OF NOT GUILTY, AT THE CLOSE
      OF THE COMMONWEALTH'S CASE AND AT THE CLOSE OF
      ALL THE EVIDENCE.

**BACKGROUND:**

The defendant filed a motion for a required finding

of not guilty at the close of the Commonwealth's case.

And also at the close of all the evidence. The defendant

argued, that the Commonwealth failed to prove that the

defendant broke or stole anything, and that the elements

of the offence were not proven. The prosecutor, argued

that a break and entry did occure. That because of the

damage that occured, there was enough evidence with

respect to the possession of burglarious tools. (TR.

1:148)

The Court, then asked the prosecutor, "what about

the intent?" The prosecutor replied, "the intent to

commit a felony, the fact that there isn't a larceny

inside, nor is the Commonwealth obligated to show what

the felony would be, but the fact that there was a

breaking into this general area would indicate that

he's trying to get into the house and it's reasonable

to infer and I believe there's cases that I don't have

cited right here that, that it's reasonable to infer

that he had breaking into the house to steal, to

burglarize the house, and that's why he's trying to

get in all various ways. So that, that is not a

stretch of the imagination. Although the Commonwealth

26

is not required to show what the felony would be inside, it's a very strong, reasonable inference that it was to commit a larceny therein.

You've heard testimony from the owner of the house that she had a dog inside the house, and I would suggest that, that's why there was not a continued larceny into the house, but also, don't forget, the neighbor comes home and he leaves a short time later. So between the coming in the house and the neighbor coming home, that there's some reasonable understanding why he would not stick around to actually burglarize the house." (TR. 1:149-151)

The Court, then gave it's decision. "Well, I'm satisfied at this stage, Mr. Pelletier, where I must draw all inferences favorable to the prosecution, that the evidence is sufficient to withstand your motion." (TR. 1:152)

**ARGUMENT:**

The test for deciding whether a motion for a required finding was properly denied is "whether, after viewing the evidence (and the fair inferences therefrom) in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979), (emphasis in original).

27

On a charge of breaking and entering in the daytime, with intent to commit a felony. The Commonwealth must prove beyond a reasonable doubt that the defendant broke into and entered a dwelling in the daytime with the intent to commit a felony. Commonwealth v. Lewis, 346 Mass. 373, 377-378 (1963). The defendant's intent to commit a felony may be infered from all the evidence, including his conduct. Commonwealth v. Lewis, supra, at 378. See also Commonwealth v. Claudio, 418 Mass. 103, 118 (1994).

As the defendant asserts that he was entitled to a required finding of not guilty primarily due to the insufficiency of the evidence as to intent, we review his claims of error to determine "whether, taking all of the evidence and all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, a rational jury could have found the essential element of intent beyond a reasonable doubt." Commonwealth v. Stoddard, 38 Mass.App.Ct. 45, 48-49 (1995). See also Commonwealth v. Latimore, supra at 676-678.

In the present case, "as in most instances where intent is an element of the crime charged, there was no direct evidence of the defendant's actual state of mind at the time of the 'breaking and entering'. In such situations, intent may be proven circumstantially 'by inference from all the facts and circumstances

28

developed at the trial.'" Commonwealth v. Stoddard,
supra, at 49, quoting from Commonwealth v. Stewart,
411 Mass. 345, 350 (1991). The inference drawn by the
jury (in this case the court) need not be necessary
or inescapable, but only reasonable and possible. Id.
at 350.

When the Court asked, "what about the intent?"
The prosecutor replied, "the intent to commit a
felony, the fact that there isn't a larceny inside,
nor is the Commonwealth obligated to show what the
felony would be." [See argument (A)(ii) and argument
(B), never notified the defendant, as to what the
intended felony was.] The prosecutor then further
argue's, "that it's reasonable to infer that he had
breaking into the house to steal." (TR. 1:149-151)

In many cases, as in the familiar instance of a
charge of breaking and entering with intent to steal
proof of the actual commission of the larceny is
decisive proof of the intent with which the entry was
made. The overt act leaves no room for doubt as to
the felonious purpose with which the previous criminal
act was prepetrated. This language is not to be taken
to mean that proof of any act, subsequant to entry, is
proof of the specific intent at the time of entry to
prepetrate that particular act but means only that in
the case of breaking and enterning evidence of a theft
makes certain the intent which other wise would

29

naturally be inferred. <u>Commonwealth v. Ronchetti</u>, 333
Mass. 78, 81-82 (1955). [The homeowner, Ms. Flores,
testified that "there wasn't anything stolen."] (TR.
1:139)

Patricia Ferreira, testified that she was on
administrative leave, and was returning home from
grocery shopping at about noon on October 9, 1998.
While unloading the groceries from her trunk, she
heard her neighbor's front porch squewk. When she
looked in that direction she saw a man, whom she
later identified as the defendant, exiting the front
porch of 63 Sycamore Street and go into the backyard.
When the defendant exited the front porch, "he looked
at Ms. Ferreira and she looked at the defendant", so
that they both saw one another.

Ms. Ferreira further testified, that Ms. Flores
house is next to hers and that on the opposite side is
a fence, and then a cemetary. That the defendant went
to the fence or cemetary side of the house. That she
went into her kitchen looking out the window, and that
her view of  Ms. Flores's house consisted of the back
yard into the cemetary, and that she did not see the
defendant. Ms. Ferreira continued to unload groceries
 from her car, she then saw the defendant come from
the cemetary side of Ms. Flores's house and walk up
Sycamore Street. (TR. 1:167-173)

There was no evidence presented that there were

30

any attempted breaks or actual breaks on the side of
the house the defendant was seen entering. The
Commonwealth's case consisted of the following, Ms.
Ferreira arrieving home and seeing the defendant exiting
the front porch of her neighbor's home and then walking
into the opposite side of her neighbor's yard. For a
five minute period she watch's for the defendant, but
she doesn't see him. Then, after a five minute period,
she sees the defendant, exit the yard opposite her house
and walk up the street. In this five minute period,
the Commonwealth alleges that the defendant attempted a
break on the front porch. Then walked to the back of
the house, breaking into the cellar. He then walked
around to the side porch, directly across from the
neighbor, Ms. Ferreira. Broke the outer screen door to
the side porch, entered the porch, and tryed to break
into the house by prying the door. Failed to gain entry.
Of course, at this point the defendant allegedly has
already broken into the cellar.  The defendant then
comes off the side porch, walks up close to the front
of the house, directly in front of Ms. Ferreira car.
The defendant then rebreaks into the cellar.  All of
this has taken place while in plain view of Ms.
Ferreira either unloading her groceries or watching from
her kitchen window.

    If the defendant had already broken into the side
of the house within Ms. Ferreira's sight, he would of

had no reason to attempt a break on the front porch
and then exit the porch and go to the opposite side of
the house, where no break or attempted break occured.
The inference drawn by the jury or in this case the
court, need not be necessary or inexcapable, but only
"reasonable and possible." Commonwealth v. Steward,
supra, at 350. [In this case, its not "reasonable or
possible" to infer, that the petitioner could of
committed the numerous attempted or actual breaks,
alleged by the Commonwealth.]

As to the attempted larceny, if the defendant was
scared off, either by Ms. Flores's dog[2/] or by Ms.
Ferreira. Why would the defendant go to the side of
the house after being seen by Ms. Ferreira or scared
off by Ms. Flores's dog. And continue to make numerous
attempted breaks or actual breaks. It is not a
reasonable inference. In fact, it would be virtually
impossible to do within Ms. Ferreirs's sight. In the
five minute period, alleged by the Commonwealth. The
prosecutor argued, "the neighbor comes home and he
leaves a short time later." (TR. 1:151) [Except that's
the time the defendant allegedly committed the crime.]

Even if you could believe the petitioner could of
possible broken into the home in that five minute
period, from when he came off the front porch, its not

---

2 There was no evidence presented, on the size of the dog.

32

a reasonable inference, that he intended to commit the felony of larceny, for the fact that no larceny occured.

The petitioner left the area of his own free will, he wasn't chased from the area. Contrast Commonwealth v. Lewis, supra, at 376-380, (Intent to commit larceny infered where defendant ran into woods after being refused lawn work and defendant had no equipment or experience doing lawn work.); Commonwealth v. Assad, 19 Mass.App.Ct. 1007, 1009 (1985) (The failure to prove what, if anything was taken is inconsequential because the indictment did not charge a completed robbery, but rather an intent to rob. It is not wholly implausible to deduce, as the defendant would have us do, that Jew's interruption of the defendant and his accomplice caused them to abanden the felonious enterprise and to concentrate on escape.) [The Commonwealth's case is that the petitioner committed the crime after being seen by Ms. Ferreira.]

In cases where circumstantial evidence is introduced, we have never required that every inference be premised on an independently proven fact, rather, we have premitted, in carefully defined circumstances, a jury to make an inference based on a inference to come to a conclusion of guilt or innocence. See Commonwealth v. Scand, 420 Mass. 783, 795, n.12 (1995). But we require that each inference must be a reasonable and logical conclusion from the prior inference, we have

made clear that a jury may not use conjection or
guesswork to choose between alternative inferences.
See Commonwealth v. Scand, supra, at 795, n.12 (1995);
Brown v. Commonwealth, 407 Mass. 84, 89 (1990), S.C.
414 Mass. 123 (1993) (Inference drawn from circumstantial
evidence need not be necessary inferences but only
"reasonable and possible.")

The Massachusetts Court, has prohibited the drawning
of speculative inferences, but have not otherwise
prohibited the drawning of one inference based on another
inference. See e.g. Commonwealth v. Armand, 411 Mass.
167, 170-171 (1991) (Conviction based on inference
reversed where we conclude it was "speculative on the
evidence." Whether the defendant had the requiste mens
rea.); Commonwealth v. Ferguson, 384 Mass. 13, 18-19
(1981) (Conviction reversed where limited evidence gave
rise to many possible inferences, requiring jury to
employ conjecture to choose among them.); Commonwealth
v. Scand, supra, see also Commonwealth v. O'Brien, 305
Mass. 393, 401 (1940) (It is, however, equally well
established that "if, upon all the evidence, the
question of the guilt of the defendant is left to
conjection or surmise and has no solid foundation in
established facts, a verdict of guilty cannot stand.")

Officer Westbrook, would testify that he was
employed as a Holyoke Police Officer, for the past 15
years. That on October 9, 1998, he recieved a dispatch

34

to go to Sycamore Street. Once there he met Officer's
Wagner and Saj. That he was asked to Check 40 Sycamore
Street , to "see if there was a break there." That the
type of house at 40 Sycamore Street, was a "white ranch
house." That there wasn't a porch and that no one was
home. That there were no signs of a break. That the
defendant was then brought from 40 Sycamore to 63
Sycamore Street. That he also "went there." That he
stayed at 63 Sycamore Street 10 to 15 minutes. That he
encircled the home, and that he "didn't find any damage
there." (TR. 1:104-107)

See Commonwealth v. Ferguson, supra, at 19. ("In
choosing among the many possible inferences from the
evidence presented in this case, the jury would
necessarily have had to employ conjecture. A conviction
based upon evidence tending equally to support
alternative prepositions, some tending to demonstrate
innocence and others tending to show guilt, cannot
stand.")

The Massachusetts Courts use of Commonwealth v.
Merola, 405 Mass. 529, 533 (1989), that "circumstantial
evidence is competent to establish guilt beyond a
reasonable doubt". Is correct as it was applied in
Merola. Merola was convicted of murder in the first
degree on the grounds of extreme atrocity or cruelty
in the death of an 18 month-old boy. "The main evidence
against the defendant was the medical evidence." Id.

35

at 534. Cited directly above the circumstantial line
in Merola. Is this line, "[m]ere opportunity to commit
the crime or presence at the scene of the crime
without other evidence is insufficient." Id. at 533.
In support, see Commonwealth v. Cordle 404 Mass 733,
734 (1989).

The evidence against petitioner was insufficient.
Petitioners motion for a directed verdict should of
been granted. The Massachusetts Courts, actions, in
this matter, are contrary to clearly established
Federal Law. And are also, an unreasonable application
of, clearly established Federal law.

D.    APPELLATE COUNSEL FAILED TO ARGUE NUMEROUS,
      IMPROPER STATEMENTS MADE BY THE PROSECUTOR
      IN HER CLOSING ARGUMENT TO THE JURY.

    **STANDARD OF REVIEW:**

The petitioner timely objected to mistatements
made by the prosecutor during her closing argument.
When a defendant objects to the prosecutor's
statements made during a closing argument, the standard
for determining whether a conviction must be reversed
because of inappropriate statements is whether the
improper statements made by the prosecutor "constitute
prejudicial error." Commonwealth v. Daggett, 416 Mass.
347, 352, n.5 (1993). The cumulative effect of all the
errors in the context of the entire argument and the
case as a whole is considered in making this
determination. See Commonwealth v. Santiago, 425 Mass.

491, 500 (1997); United States v. Balsam, 203 F.3d 72,
87 (C.A.1(Mass)2000).

The following factor's are determinant, "whether
defense counsel seasonably objected to the argument
at trial, ... whether the judge's instruction mitigated
the error, ... whether the error in the argument went
to the heart of the issues at trial or concerned
collateral matters. ... Whether the jury would be able
to sort out the excessive claims made by the
prosecutor ... and whether the Commonwealth's case
was so overwhelming that the errors did not prejudice
the defendant." Commonwealth v. Wilson, 427 Mass. 336,
351 (1998), quoting Commonwealth v. Santiago, supra,
at 500. The relevant question is whether the
prosecutor's comments "so infected the trial with
unfairness as to make the resulting conviction a
denial of due process." Donnelly v. DeChristoforo,
416 U.S. 637 (1974).

**ARGUMENT:**

The prosecutor improperly mistated the evidence
in three separate instances. First, "so I suggest to
you if the defendant was simply on the side of the
house vomiting because he didn't want to do this in
front of the lady that she would -- I suggest to you,
quite possible have seen him." (TR. 2:19) Second, "she
said once you get back to the cellar area, she cannot
see." (TR. 2:19) At this point the petitioner objected.

37

The Judge stated in open court, "Mr. Pelletier, it's inappropriate to object during the closing argument. If you have an objection you can address it to me after the arguments are completed." (TR. 2:20) And third, the prosecutor immediately repeated, "but the area she told you she couldn't see was right in the back cellar area and you heard the defendant was back there for approximately five minutes." (TR. 2:20)

Ms. Ferreira, testified as follows, for the Commonwealth. (Q). Okay. Now, when you said that this man walked around to the back of the house, the path he took going around to the back of the house, would that have been the side closest to your house or furthest away? (A). Furthest. (Q). Okay. So he went around the side that -- near the fence? (A). Right. (Q). And you said that you were in your kitchen looking out the window? (A). [Witness nodding] (Q). What if anything, did you see? (A). I didn't see anything. (Q). What would be your view of 63 Sycamore Street from your kitchen window? (A). Well, I can see their backyard, and I can see most of the cemetery on the side. (Q). Okay. And you didn't see anything? (A). No. (TR. 1:71)

It's clear from Ms. Ferreira's testimony that she saw the defendant go to the opposite side of her neighbor's home. [The side she couldn't see]. That Ms. Ferreira, had a clear view of her neighbor's

38

backyard, into the opposite side where the cemetery is beyond her neighbor's fence. therefore, contrary, to the prosecutor's suggestion that Ms. Ferreira could not possible have seen the defendant vomiting. Ms. Ferreira, also clearly stated she could not see the defendant at any point that a break either occured, or was attempted. [And, they were all within her sight.] Also, that she did not actually see the defendant in her neighbor's backyard. (TR. 1:66-78)

At the end of the prosecutor's closing argument. The Court heard the defendant's objections. The petitioner stated, that the prosecutor mistated the facts several times. (TR. 2:31-32) The Court replied, "that's -- that's a matter for the jury. Their recollection of the evidence, their recollection of the evidence will control there." (TR. 2:31)

A prosecutor is entitled to argue forcefully for the defendant's conviction. Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). In addition "the prosecutor is entitled to argue the evidence and 'fair inferences' to be drawn therefrom." Commonwealth v. Paradise, 405 Mass. 141, 152 (1989). The prosecutor's statements were incorrect and gave the impression that the defendant "must be lying." In no way, could the prosecutor's improper statements be considered fair inferences. Arguments that are unsupported by the evidence and thus are speculative and conjectual are of course

39

improper. Commonwealth v. Conner, 392 Mass. 838, 835 (1984). The Court erred, by putting off the defendant's objection. And then by overruling the defendant'a valid objection. The Court erred when it "appeared to give judicial endorsement to the prosecutor's improper argument." Commonwealth v. Cobb, 374 Mass. 512, 521 (1978). The sequence of events are, several improper statements made by the prosecutor. A valid objection by the petitioner. The Court's, putting off, of that objection. Then the Court's refusal to give curative instructions, violating the petitioners right to due process of law. Contrast Greer v. Miller, 483 U.S. 756, 766 (1987) ("The sequence of events in this case--a single question, an immediate objection, and two curative instructions--clearly indicate that the prosecutor's improper question did not violate Miller's due process rights.")

The Massachusetts Courts used, Commonwealth v. Silva, 401 Mass. 318, 329 (1987). To state that the term, "I suggest" is "a rhetorical device to urge the jury to draw inferences from the evidence favorable to his case." Id. at 329. If the Court reads Silva, the sentence actually begins "The prosecutor in this case permissibly used the words as a rhetorical device to urge the jury to draw inferences from the evidence favorable to his case." Id. at 329.

The Court in Silva, specifically stated, "in this

40

case." The Court did not creat a new rule. That would allow prosecutor's to cloak their errors in closing arguments, by stateing "I submit" or "I suggest." Silva, represents a case by case decision. Not a blanket exception, that would give prosecutor's free rein to violate defendant's due process rights. The Massachusetts Courts decision is contrary to clearly established Federal law. And is also, an unreasonable application of clearly established Federal Law.

E.    APPELLATE COUNSEL FAILED, IN THAT HE DID NOT
      ARGUE THAT THE TRIAL JUDGE IMPERMISSIBLE,
      CONSTRUCTIVELY AMENDED AND BROADENED. THE
      PETITIONERS TWO BREAKING AND ENTERING,INDICTMENTS.

The trial judge erred, when he constructively amended and broadened the petitioners indictments. When he instructed the jury, that larceny was the intended felony. That the petitioner attempted to commit, in conjuction with the breaking and entering indictments.

There was no evidence presented to the Grand Jury, that there was a larceny or even an attempted larceny committed by the petitioner or anyone else, when 63 Sycamore Street was alleged to have been broken into. See "RA" at 33. (Grand Jury minutes) Nor could the Grand Jury assume, a reasonable inference, that the petitioner intended to commit the felony of larceny. Where no evidence of the intended felony, was presented nor found by them. Neither the prosecutor nor the trial judge, may amend or broaden the indictment, through a

41

bill of particulars or instruction to the jury. Only the Grand Jury may broaden an indictment.

The evidence presented by the Commonwealth is that the petitioner allegedly broke into 63 Sycamore Street. A neighbor (Ms. Ferreira) saw the Petitioner leave the front porch area, then walk into the side yard area and five minutes later, she saw the defendant leave and walk up the street, towards Cabot Street. There was no evidence presented that anything was taken from the home, nor that the petitioner had attempted to take anything from the home. See G.L. c. 266 § 30, (Larceny), section (1), ("[I]f the value of the property stolen exceeds two hundred and fifty dollars,"). To be a felony, the property has to exceed, a value of two hundred and fifty dollars.

The "intent to commit a felony" is an essential element of the crime proscribed by G.L. c. 266 § 18, Breaking and Entering in the Daytime with intent to commit a Felony. Commonwealth v. Vinnicombe, 28 Mass.App.Ct. 934, 935 (1990). The trial judge never defined, the term felony. See Commonwealth v. Walter, 40 Mass.App.Ct. 907, 909 (1996) ("Because the jury not informed of the meaning of felony, "[t]he defendant's fate thus turned on a layman's definition of [felony]. [This is a] technical matter[] with which layman cannot be expected to be familiar."") The prosecutor presented no evidence, that the petitioner, took, or tried to

42

take any possession, of the homeowner's.

Although no evidence of larceny or attempted larceny was presented or found by the Grand Jury, nor presented in the indictment. The trial judge constructively amended the indictment, through instruction to the jury that the intended felony to be committed was larceny, as set out below: "Now, both the offences of breaking and entering and the offence of possession of burglarious tools require proof of intent. and as I have instructed, intent is a state of mind; it's an objective or purpose. the Commonwealth must prove Mr. Pelletier had this intent, that is, that he formed a thought by concertration or focusing of his mind prior to the act. the intent here is the intent to commit a larceny."

"There are three elements to the offence of larceny. The first is that the defendant took and carried away; second, property that was owned and possessed by someone else; Third, that it was done with the intent to deprive that person permanently of the property." (TR. 2:46-47) "The judge in his instruction considered any larceny to constitute the felony element of G.L. c. 266 § 1[8]. This was error. Under G.L. c. 266 § 30, a larceny is not a felony unless the value of the property stolen exceeds $250." Commonwealth v. Hill, 57 Mass.App.Ct. 240, 249 (2003).

The petitioner was not notified that larceny was the intended felony, nor did the indictment specify or

43

allege larceny as the intended felony to be committed. The accused has a substantial right to be tried only on charges that have in fact been passed on by a Grand Jury and presented in a indictment returned by the Grand Jury. United States v. Miller, 471 U.S. 130, 135 (1985), citing Stirone v. United States, 361 U.S. 212, 216 (1960); Ex Parte Bain, 121 U.S. 1 (1887).

The Grand Jury Clause of the Constitution, requires that proof and jury instructions must be for crimes that were "clearly and fully set out in the indictment" as returned by the Grand Jury. United States v. Miller, supra, 471 U.S. at 137, is fatal. It is reversible pre se. Stirone v. United States, supra, at 216. An indictment may not be "amended except by resubmission to the Grand Jury." Russell v. United States, 369 U.S. 749, 770.

A Court can not permit a defendant to be tried on charges that are not made in the indictment against him, nor convicted of charges not presented in the indictment. "The Fifth Amendment gives every indicted defendant the right to be tried only on the charges made by the Grand Jury that indicted him. If he is to be convicted, the conviction must rest solely on the charges made by the indictment. Neither the prosecution nor the Trial Judge can alter the charge to fit the proof; to do so would be upsurping the function of the Grand Jury." Stirone v. United States,

44

361 U.S. 212 (1960).

The Trial Judge, through his erronously given jury instruction. See Commonwealth v. Walter, supra, and Commonwealth v. Hill, supra. Impermissible amended and broadened the indictment. The Due Process Clause protects those "priciple's of justice so rooted in the traditions and concience of our people as to be ranked as fundamental." Patterson v. New York, 432 U.S. 197, 202 (1977). The Trial Judge constructively amended and broadened the indictment which allowed the jury to find the petitioner guilty with out support from the evidence of intending to commit a crime not charged by the Grand Jury or presented in the indictment. Petitioners Fifth and Fourteenth Amendment Rights were violated denying the petitioner a fair trial, due process of law and to be tried on solely relevant evidence. Jackson v. Virginia, 443 U.S. 313, 316 (1979).

The Massachusetts Courts, did not answer this argument, in the petitioners appeal. The Massachusetts Courts decision is contrary to clearly established Federal law. And is also, an unreasonable application of clearly established Federal law.

2.  **THE EVIDENCE INTRODUCED AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE GUILTY VERDICT. RETRIAL IS BARRED, BY THE PRINCIPLES OF DOUBLE JEOPARDY, UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

"We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered

45

insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial." <u>Monge v. California</u>, 524 U.S. 721, 729 (1998). See also <u>Burks v. United States</u>, 437 U.S. 1, 18 (1978) ("Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only 'just' remedy available for the court is the direction of a judgment of acquittal.")  "[T]he Double Jeopardy Clause bars an appeal by the prosecution not only when it might result in a second trial, but also if reversal would traslate into further proceedings devoted to the resolution of factual issues going to the elements of the offence charged." <u>Smalis v. Pennsylvania</u>, 476 U.S. 140, 142 (1986).

If the Court finds, that the petitioners argument for a directed verdict is correct. Then the Massachusetts Courts decision, in this matter is contrary to clearly established Federal law. And is also, an unreasonable application of clearly established Federal law.

## CONCLUSION

The Petitioner, would ask this Honorable Court, to grant the petitioners request for a Writ of Habeas Corpus. On the grounds that his Appellate Counsel, was ineffective, in conducting the petitioners direct appeal. And order that, the State of Massachusetts retry the petitioner.

In the alternative, the petitioner would ask , that if the Court finds, that the evidence was legally insufficient to convict the petitioner. That the Court order, the State of Massachusetts, to immediately and unconditionally, release the petitioner.

Respectfully submitted,
by the Petitioner,

Dated: January 10, 2005

Robert Pelletier, pro se
Souza-Baranowski Correctional Center
Harvard Road
P.O. Box 8000
Shirley, Massachusetts 01464-8000

47

under G.L. c. 266 § 15, the Commonwealth must establish not only that the defendant did break and enter a dwelling house in the nighttime, but that he did so with the intent to commit a felony." <u>Willard</u>, at 653.

The judge supports that position, with the following two cases. first, <u>Commonwealth v. Ronchetti</u>, 333 Mass. 78 (1955) But see at page 82. ("[T]he evidence warranted a finding that the intent was, as alleged in the indictment, to commit larceny in the dwelling house."); <u>Commonwealth v. Randell</u>, 50 Mass.App.Ct. 26 (2000). But see at page 26. ("From his conviction of larceny in a building and breaking and entering in the nighttime with the intent to commit a felony, the defendant appeals,"). In both cases cited, the defendant was either indicted with the intended felony, as part of the indictment or indicted separately for the underlying felony, that was used to support the breaking and entering indictment.

The judge in <u>Willard</u>, continues, "[a] burglary indictment need not specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony." <u>Willard</u>, at 653. For that assumption, the judge relies upon, <u>Commonwealth v. Porcher</u>, 26 Mass.App.Ct. 517, 521 (1988) and <u>Rogan v. Commonwealth</u>, 415 Mass. 376, 379 (1993).

The Court in <u>Porcher</u>, relied upon one case to