# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                            )
**ROBERT PELLETIER**                        )
        **Petitioner,**                )
                                            )
**v.**                                      )     **Civil Action No. 05-30014-MAP**
                                            )
**LOIS RUSSO, SUPERINTENDENT,**             )
        **Respondent.**                )
_____)

## MEMORANDUM OF THE RESPONDENT
## IN SUPPORT OF MOTION TO DISMISS

The respondent submits this memorandum in support of her motion to dismiss the petition for writ of habeas corpus filed by Robert Pelletier ("the petitioner") who was convicted in 1999 of breaking and entering a dwelling in the daytime with intent to commit a felony and possession of burglarious tools. He seeks federal habeas corpus relief on two grounds: (1) appellate counsel rendered ineffective assistance of counsel in that he failed to argue numerous issues in the petitioner's direct appeal and (2) the evidence introduced at trial was insufficient to sustain the guilty verdict. (Petition, p. 5, ¶ ¶ 12A-12B).

As discussed more fully below, the petitioner has failed to prove that the Massachusetts Appeals Court's adjudication of his claims of ineffective assistance of trial and appellate counsel and insufficiency of the evidence was contrary to or an unreasonable application of clearly established Supreme Court law.

**2**

**PRIOR PROCEEDINGS** [1]

On November 17, 1998, the Hampden County Grand Jury returned indictments against the petitioner for breaking and entering a dwelling house in the daytime with intent to commit a felony and possession of burglarious tools.  On November 30, 1998, he was arraigned and Atty.  Donald Frank was appointed by the Court to represent him.   On March 26, 1999, the petitioner dismissed Atty. Frank and proceeded pro se.  Atty. David Gagne was appointed as standby-counsel to assist the petitioner.  Trial commenced on April 16, 1999 before McDonald J. and a jury.  The petitioner represented himself with the assistance of William McNeill as standby counsel. The Commonwealth presented testimony from six witnesses, four of whom were police officers.  At the close of the Commonwealth's case, the petitioner moved for a directed verdict of not guilty which was denied.  After two days of trial, the jury returned a verdict of guilty on all counts.  On April 27, 1999, the petitioner received concurrent sentences of seven to ten years on the two burglary indictments and the third indictment for possession of burglarious tools was placed on file with the petitioner's consent.

The petitioner filed a notice of appeal on May 21, 1999 and Atty. David Dubinsky of the Committee for Public Counsel Services was appointed to represent him in his appeal. The Massachusetts Appeals Court affirmed the judgment of conviction on June 12, 2002. *Commonwealth v. Pelletier*, 55 Mass. App. Ct. 1103, 769 N.E. 2d 798 (2002).  His application for leave to obtain further appellate review was denied on April 30, 2003.  *Commonwealth*

---

[1]  The facts in this section are derived from the Brief of the Defendant-Appellant on Appeal to the Massachusetts Appeals Court.  (Supp. Ans. Exh. 1 at 1-3.)

3

*v. Pelletier*, 439 Mass. 1104, 787 N.E. 2d 1058 (2003).

On August 28, 2002, the petitioner filed a motion for a new trial in Superior Court. (Supp. Ans. Exh. 1 at RA 7, 17-28). On October 20, 2003, the motion was denied by the trial judge, McDonald, J. (Supp. Ans. Exh. 1 at RA 94). The petitioner appealed the denial of the new trial motion. On November 5, 2004, the Massachusetts Appeals Court affirmed the order denying the motion for a new trial. *Commonwealth v. Pelletier*, 62 Mass. App. Ct. 1109, 817 N.E. 2d 339(2004)(Unpublished)(Supp. Ans. Exh. 4). His application for leave to obtain further appellate review was denied on December 23, 2004. *Commonwealth v. Pelletier*, 443 Mass. 1101, 820 N.E. 2d 258 (TABLE)(2004)(Supp. Ans. Exh. 5). The instant habeas corpus petition was filed on January 19, 2005.

## STATEMENT OF FACTS [2]

On October 9, 1998, at approximately 12:45 p.m., Holyoke Police Officer Gary Wagner responded to a dispatch concerning a man acting suspiciously in the vicinity of 63 Sycamore Street. The report described the man as white, balding, and wearing a gray jacket and jeans. Officer Wagner, although in uniform, drove an unmarked car. Officer Jan Saj, in uniform and driving a marked cruiser, also responded to the call. Officer Wagner spotted the petitioner who matched the description emerging from the yard at 40 Sycamore Street, about 100 yards from 63 Sycamore Street. The petitioner crossed the street to the sidewalk. Officer Wagner pulled in front of the petitioner and Officer Saj pulled in back of him.

---

[2] The facts in this section are derived from the Briefs of the Defendant and the Commonwealth in the petitioner's direct appeal. (Supp. Ans. Exh. 1-2). *See Commonwealth v. Pelletier*, 55 Mass. App. Ct. 1103, 769 N.E. 2d 798 (2002).

4

Officer Wagner got out of his car, stopped the petitioner, and asked  him where he had come from.  The petitioner pointed toward the house at 40 Sycamore and said:"Over there."  Officer Wagner asked him where he lived.  The petitioner responded: "Walnut Street."  When Officer Wagner asked him what number, the petitioner said he did not know.  Officer Wagner asked the petitioner who he was visiting at 40 Sycamore.  The petitioner answered, " The Sullivans."

Officer Wagner determined that there was nobody home at the 40 Sycamore address.   An unidentified bystander volunteered that the Sullivans no longer lived at that address, that they had moved ten years earlier.  A pat frisk of the petitioner uncovered a knife from the petitioner's right rear pocket and a screwdriver, partially exposed, from his front pocket.

While Officer Saj remained with the petitioner, Officer Wagner proceeded to 65 Sycamore Street where the complainant, Patricia Ferreira, lived.  Ms. Ferreira told Officer Wagner that, as she arrived home from doing her grocery shopping, she saw a balding, white male wearing a gray jacket and jeans coming from the front porch of her neighbor's house.  She observed this person walking around the house and into the backyard.  Finally she saw him walk from the rear of the house up towards Cabot Street.

Ms. Ferreira told the officer that the owner of the house was not home.  Officer Wagner investigated 63 Sycamore, noting that the inner door leading to the front porch was open and that there was a small three inch cut in the outside screen covering the porch window leading to the house.  There was no damage to the front door.

5

Officer Wagner then walked around the house, up a small stairway, and entered another small porch in the rear of the house. There he noted prymarks on a metal storm door leading to the house. Because there were several small white chips on the floor below the prymarks, Officer Wagner concluded that the prymarks were recent. With the assistance of Ms. Ferreira, Officer Wagner contacted the owner of the house.

(Meanwhile the petitioner was being transported in the backseat of the police cruiser to 65 Sycamore Street by Officer Saj He was not handcuffed or under arrest at this time. While being transported, the petitioner admitted that he had been on the porch of a white house. Officer Saj then advised the petitioner of his Miranda rights and the conversation terminated.)

Approximately five minutes later, Luz Flores, the owner of the home arrived at the scene. Ms. Flores was shown the areas of damage. She indicated that the damage, including the cut in the front window screen, the cut in the front door screen, and the damage to the basement door were fresh. She also stated that the inner and outer doors and windows were shut when she left the house.

Officer Saj next went to the complainant's home at 65 Sycamore Street to ask whether Ms. Ferreira could identify the petitioner. When Ms. Ferreira came to the door, Officer Saj asked her if she could help identify the person she saw on her neighbor's property. She said:" Yes, that's the gentlemen that's running away from your cruiser." Officer Saf turned and observed a police officer chasing the petitioner down the street. The petitioner was eventually apprehended, placed him under arrest and transported to the police station.

**6**

## STANDARD OF REVIEW

Because the instant petition for writ of habeas corpus was filed after the effective

date of the Antiterrorism and Effective Death Penalty Act (AEDPA), review of the

petitioner's claims is governed by that statute. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

The relevant statutory provision, 28 U.S.C. § 2254(d)(1), states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States;

In *Williams v. Taylor,* 529 U.S. 362, 412 (2000) (O'Connor, J., Opinion of the Court)

the Supreme Court gave independent meaning to both the "contrary to" and the

"unreasonable application" clauses of the statute. *See id.* at 405. Under the first prong of §

2254(d)(1), the Court stated that a decision may be "contrary to . . . clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.

§ 2254(d)(1), in two ways. First, "[a] state-court decision will certainly be contrary to our

clearly established precedent if the state court applies a rule that contradicts the governing

law set forth in [the Supreme Court's] cases." *Williams,* 529 U.S. at 405. Second, "[a]

state-court decision will also be contrary to this Court's clearly established precedent if the

state court confronts a set of facts that are materially indistinguishable from a decision of

this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405-

7

406.[3]

The Court interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," a phrase shared by both clauses, to "refer[] to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The statute thus "restricts the source of clearly established law" to the Supreme Court's holdings. *Id.*

Under the second prong of § 2254(d)(1), "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" qualifies as "'an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407 (quoting 2254(d)(1)). In determining whether a state-court decision unreasonably applies Supreme Court precedent, "a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. As the Court stressed, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

---

[3] Under both scenarios, "contrary to" means "diametrically different," "opposite in character or nature," or "mutually opposed," such that — as the text of relevant precedent of this Court" in order to satisfy the "contrary to" clause. *Williams v. Taylor*, 120 S.Ct. at 1519. Justice O'Connor emphasized that a "run-of-the-mill state-court decision applying the correct legal rule from [its] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 1520.

8

*Id.* at 411.  The First Circuit recently explained the degree of error that must be shown by

the petitioner to reach the level of an "objectively unreasonable" state court decision.

"[S]ome increment of incorrectness beyond error is required….The increment need not

necessarily be great, but it must be great enough to make the decision unreasonable in the

independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d

24, 36 (1st Cir. 2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

## ARGUMENT

I.    **THE STATE COURT ADJUDICATION OF THE PETITIONER'S
      INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM WAS NOT CONTRARY
      TO NOR AN UNREASONABLE APPLICATION OF** *STRICKLAND V.
      WASHINGTON*, **466 U.S. 668 (1984).**

          In Ground One, the petitioner basically contends that he was denied the effective

assistance of counsel because his appointed lawyer on his direct appeal failed to raise three

issues, i.e.,  trial counsel's failure to challenge the validity of the indictments; the

sufficiency of the evidence; and the propriety of the prosecutor's closing argument.

(Petition, p. 5, ¶ 12A and Attachment).

          In *Williams v. Taylor*, 529 U.S. at 390-391, the Supreme Court held that *Strickland v.*

*Washington*, 466 U.S. 668 (1984) was the clearly established federal law that controlled

claims related to ineffective assistance of counsel.  The *Strickland* analysis may be stated as

follows: to determine whether counsel's performance was sufficient under the Sixth

Amendment, the inquiry "is whether counsel has brought 'to bear such skill and

knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v.*

*DuBois*, 38 F.3d 1, 8 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995), *quoting Strickland v.*

9

*Washington*, 466 U.S. 668, 688 (1984). *See Bell v. Cone*, 122 S.Ct. at 1850. In state court, the petitioner bore the heavy burden of proving ineffective assistance, *Scarpa v. DuBois*, 38 F.3d at 8-9; *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993), which required a two-part analysis. First, the petitioner is required to show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690. That is, he needs to establish "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The standard "demands a fairly tolerant approach," *Scarpa v. DuBois*, 38 F.3d at 8, as the Constitution does not guarantee "a letter-perfect defense or a successful defense." *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992). *See Williams v. Taylor*, 529 U.S. at 390-391; *Matthews v. Rakiey*, 54 F.3d 908, 916 (1st Cir. 1995).

The state court was not to apply the performance standard "in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." *United States v. Natanel*, 938 F.2d at 309. Moreover, that court was required to "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Scarpa v. DuBois*, 38 F.3d at 8, *quoting Strickland v. Washington*, 466 U.S. at 689. *See Genius v. Pepe*, 147 F.3d 64, 66 (1st Cir. 1998) ("counsel's judgments in formulating the defense strategy are entitled to substantial deference"), *cert. denied sub nom., Genius v. Hall*, 526 U.S. 1121 (1999). But this is only the first part of the test. The petitioner is also required to demonstrate to the state court that he was prejudiced by counsel's alleged errors — that is, he is required to show a

10

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694; *Scarpa v. DuBois*, 38 F.3d at 8, 16. *See Bell v. Cone*, 122 S.Ct. at 1850. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694. Finally, counsel's alleged blunders were not to be "judged solely by the 'surrounding circumstances' of the representation, but, rather, [were to] be judged [by the state court] in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law." *Scarpa v. DuBois*, 38 F.3d at 15.

In reviewing the petitioner's ineffective assistance of appellate counsel claims, the Massachusetts Appeals Court concluded that none of the issues that the petitioner wished his appellate counsel had raised were meritorious or had any chance of success.

A. Indictments:

The petitioner first asserted that appellate counsel erred because he did not raise on appeal pre-trial counsel's failure to move to dismiss indictments on the ground that the indictment had failed to identify the intended felony in the burglary indictment. (Supp. Ans. Exh. 1 at 18-22).   This claim had no chance of success.  Under Massachusetts law, to prove a defendant guilty of burglary the Commonwealth must establish not only that the defendant did break and enter a dwelling house in the daytime but that he did so with the intent to commit a felony.  G.L. c. 266, § 18.  *See Commonwealth v. Ronchetti*, 333 Mass. 78, 81-82, 128 N.E.2d 334 (1955).  In Massachusetts, a burglary indictment need not specify the intended felony by name, as the identity of the felony is not an element of the crime and the

11

jury can find an intent to commit an unspecified felony. *Commonwealth v. Porcher*, 26 Mass. App. Ct. 517, 521(1988). The Massachusetts Appeals Court applied these state law precedents in rejecting the petitioner's assertion that the indictments were invalid for not specifying the exact felony contemplated when he broke and entered the victim's house. The Appeals Court stated:

> *Indictments.* "[A] burglary indictment need not ... specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony." *Commonwealth v. Willard*, 53 Mass.App.Ct. 650, 656 (2002). We agree with the motion judge that the indictments were not infirm. Thus, a motion to dismiss the indictments was foredoomed.

*Pelletier*, 62 Mass. App. Ct. at 1109. (Supp. Ans. Exh. 4). [4] Clearly appellate counsel was not ineffective for failing to raise a claim contrary to state law.

## B. Sufficiency of the Evidence

The petitioner next contends that appellate counsel failed to argue that the trial court erred in denying a motion for a required finding of not guilty. (Supp. Ans. Exh. 1 at 22-32). ( He also raises this allegation as an independent claim of judicial error as well as evidence of ineffective assistance of counsel. (Petition, p. 5, ¶ 12B). *See infra.*) Regardless of what constitutional tack the petitioner chooses to take, no error was committed by appellate counsel or the trial judge relative to the sufficiency claim. The Massachusetts Appeals Court addressed the core issue and rejected the claim as follows:

---

[4] Moreover, as the Commonwealth pointed out in its Memorandum in Support of Summary Disposition (Supp. Ans. Exh. 2 at 5), the petitioner fired his lawyer and represented himself for three weeks before trial commenced. He could have filed a motion to dismiss the indictments himself at that time. *See Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975)("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'")

12

*Sufficiency of the evidence.* The motion judge was well within his discretion to reject the defendant's challenge and conclude that the evidence was more than sufficient to prove guilt beyond a reasonable doubt. The neighbor who called the police saw the defendant exiting the subject house near high noon on the date in question. The front porch screen window had been cut; there were fresh pry marks by the rear door; and an interior door had been ripped off its hinges. When stopped by the police officers, the defendant had a screwdriver and knife in his pants pocket. It is settled law that circumstantial evidence is sufficient to sustain a guilty verdict. *See, e.g., Commonwealth v. Merola*, 405 Mass. 529, 533 (1989).

An appellate advocate's job is to focus on the issues that appear the most promising ones for review. Here, appellate counsel's decision to forego making a doomed sufficiency argument indicated the exercise of sound judgment, not ineffective assistance. *See Jones v. Barnes*, 463 U.S. 745, 751-752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal").

The trial court correctly rejected the motion for a required finding of not guilty and the Appeals Court's affirmation of that decision reflected the Supreme Court's thinking on the subject. Under 28 U.S.C. § 2254(d)(1) the focus of an inquiry by a habeas court considering a sufficiency challenge to a conviction is the reasonableness of the state court decision. *Hurtado v. Tucker*, 245 F. 3d 7, 18 (1st Cir. 2001). *See Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000). *Jackson v. Virginia*, 443 U.S. 307 (1979) is the clearly established Supreme Court precedent governing challenges to the sufficiency of the evidence. Under *Jackson*, the appellate court must consider the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. [5]

---

[5] Both the First Circuit and Supreme Judicial Court consider the *Jackson* test "essentially identical" or "substantially comparable" to the Massachusetts directed verdict standard long applied by the state appellate courts. *See Nadworny v. Fair*, 872 F.2d 1093,

13

Habeas petitions which challenge the sufficiency of the evidence upon which their conviction rests do not implicate the "contrary-to" strand of the habeas statute since the state court adjudications at issue are essentially "a run-of-the-mill state court decision applying the correct legal rule from the [Supreme Court's] cases to the facts of a prisoner's case." *Hurtado*, 245 F. 3d at 15, quoting *Williams*, 529 U.S. at 406. The habeas court must turn to the second prong and determine whether the state court decision was an unreasonable application of *Jackson v. Virginia*.

Under *Jackson*, a reviewing court may only consider whether a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 324. The reviewing court does not weigh the evidence, and "must accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Kelly v. Roberts*, 998 F.2d 802, 808 (10th Cir. 1993). Nor should it "reread the record from the petitioner's perspective", *Palmariello v. Superintendent of M.C.I. Norfolk,* 873 F. 2d 491, 493 (1st Cir.), *cert. denied*, 493 U.S. 865 (1989), or make its own subjective determination of guilt or innocence, *Herrera v. Collins,* 506 U.S. 390, 401(1993), *quoting Jackson*, 443 U.S. at 318-319. [6]

_____

1102 (1st Cir. 1989) and *Commonwealth v. Latimore*, 378 Mass. at 677.

[6] Prior to AEDPA, it was the practice of a habeas court to make the inquiry *de novo* "on a cold record without any special deference to either the state's highest court, *see Jackson*, 443 U.S. at 318- 25, or the federal district court, *see Scarpa v. DuBois*, 38 F.3d 1, 9 n. 5 (1st Cir.), *cert. denied*, 513 U.S. 1129 (1994), beyond the persuasive power of their (conflicting) interpretations of the record." *Stewart v. Coalter*, 48 F.3d 610, 614 (1st Cir.), *cert. denied*, 516 U.S. 853 (1995). With the passage of AEDPA, *de novo* review has been explicitly rejected in favor of a deferential standard of review, *Williams*, 120 S. Ct. at 1519, in which the state court's adjudication of the evidentiary sufficiency claim becomes the focus of the inquiry and the measuring rod is whether the decision was an unreasonable application of *Jackson's* core holding.

14

_____Here the Appeals Court detailed the evidence which was more than sufficient to support the petitioner's conviction. *See infra.*, Statement of Facts. Shoring up the petitioner's guilt was his implausible explanation for his actions as well as his escape and flight from the police cruiser.

## C. Prosecutor's Summation

_____The petitioner finally contends that appellate counsel failed to attack the prosecutor's summation as improper argument on appeal. He asserts that the prosecutor make misstatements in her closing when she said to the jury "So I suggest to you if the defendant was simply on the side of the house, vomiting, because he didn't want to do it in front of the lady that she would have, I suggest to you, quite possibly have seen him." The Appeals Court rejected the claim, stating:

> **Closing arguments.** The defendant accuses the prosecutor of making misstatements in her closing argument. We disagree. *See Commonwealth v. Silva*, 401 Mass. 318, 329 (1987) (phrase "I suggest" is "a rhetorical device [designed] to urge the jury to draw inferences from the evidence favorable to [the] case"). Furthermore, the judge directed the jurors to use their "common sense, good reasoning, and good judgment." In light of these instructions, the jurors would not have concluded that the prosecutor was suggesting that the neighbor, Ms. Ferreira, somehow had the capacity to see through the solid structure of the house and observe the defendant standing on the far side, he says, vomiting. The defendant has failed to show serious incompetency, inefficiency, or inattention on appellate counsel's part that deprived him of an otherwise available, substantial ground of defense in respect to a potential appellate challenge to the prosecutor's closing. *See Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974). In short, even if the judge credited the defendant's story about vomiting, there was ample time and opportunity for the defendant to break into the back of the house.

The Supreme Court has offered only general pronouncements in the area of prosecutorial misconduct during summation. In *Donnelly v. DeChristoforo*, 416 U.S. 637, 638-639 (1974), the court held that the prosecutor's closing argument was not sufficiently

15

prejudicial to violate the petitioner's due process rights.  The Supreme Court endorsed the First Circuit's statement "that its review was 'the narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court.'"  *Id.* at 642.  The court stressed that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'"  *Id., quoting Lisenba v. California*, 314 U.S. 219, 236 (1941).  *See Smith v. Phillips*, 455 U.S. at 221 ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension").

Like *Donnelly,* the instant claim does not implicate any specific provision of the Bill of Rights, as would, for example, a comment on a defendant's failure to testify in his own behalf.  With respect to such claims, habeas petitioners must establish more than that the prosecutor's behavior was "undesirable," "erroneous," or even "universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. at 221, *quoting Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  Rather, the relevant question is whether "a prosecutor's [behavior] so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. at 643.  Moreover, the "touchstone of due process analysis is cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. at 219.

Here, the petitioner failed to establish that the challenged remarks was even improper, much less that it infected the trial with unfairness as to make the resulting

16

conviction a denial of due process.  Appellate counsel's choice not to pursue this losing

claim on appeal fell within the wide range of professionally competent assistance.  *See*

*Strickland v. Washington*, 466 U. S. at 690, 694.  The Appeal Court's decision that counsel

was not ineffective for failing to include the claim on appeal is not an unreasonable

application of *Strickland.*

**B.    THE STATE COURT ADJUDICATION OF THE PETITIONER'S SUFFICIENCY OF THE EVIDENCE CLAIM WAS NOT CONTRARY TO NOR AN UNREASONABLE APPLICATION OF *JACKSON V. VIRGINIA,*  443 U.S. 307 (1979)**

In Ground Two, the petitioner alleges that the trial court erred in denying his

motion for a required finding of not guilty on sufficiency of the evidence grounds.

(Petition, p. 5, ¶ 12B).  The respondent incorporates by reference the previous argument

that there was sufficient evidence for the jury to conclude beyond a reasonable doubt the

petitioner was guilty of the crimes charged and the Appeals Court's adjudication of the

issue fell squarely within Supreme Court precedent.  *See infra.*

CONCLUSION

For the above-stated reasons the petition should be dismissed for failure to state a

claim upon which habeas corpus relief can be granted.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Annette C. Benedetto
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place

17

**Boston, Massachusetts 02108**
**(617) 727-2200**
**BBO No. 037060**

**CERTIFICATE OF SERVICE**

_____**I hereby certify that a true copy of the above documents was served upon the following petitioner,  pro se,  by first class mail, postage pre-paid, on June 22, 2005.**

**Robert Pelletier, pro se**
**Souza-Baranowski Correctional Center**
**PO Box 8000**
**Shirley, MA 01464**

                                        **/s/ Annette C. Benedetto**
                                        **Annette C. Benedetto**
                                        **Assistant Attorney General**