UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT PELLETIER,           )
    Petitioner              )
                            )
                            )
    v.                      )    Civil Action No. 05-30014-MAP
                            )
                            )
LORI RUSSO, SUPERINTENDENT, )
    Respondent              )

REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENT'S MOTION
TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS and PETITIONER'S
CROSS MOTION FOR SUMMARY DISPOSITION (Document Nos. 17 and 21)
January 20, 2006

NEIMAN, U.S.M.J.

In this *pro se* action, Robert Pelletier ("Petitioner"), a state inmate serving two

concurrent seven to ten year sentences for breaking and entering in the daytime with

the intent to commit a felony, seeks *habeas corpus* relief pursuant to 28 U.S.C. § 2254,

as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

As required by the *habeas* rules, the petition is directed at the superintendent of the

prison where Petitioner is housed ("Respondent").  *See* Rules Governing Section 2254

Cases in the United States District Courts, Rule 2(a).

Respondent's motion to dismiss the petition and Petitioner's cross motion for

summary disposition have been referred to this court for a report and recommendation.

*See* 28 U.S.C. § 636(b)(1)(B).  For the following reasons, the court will recommend that

Respondent's motion to dismiss be allowed and that Petitioner's motion be denied.

## I. BACKGROUND

This background is divided into two parts, first, a summary of the procedural history and, second, an outline of the underlying facts.

### A. PROCEDURAL HISTORY

On April 18, 1999 -- at the end of a trial in which Petitioner represented himself *pro se* with the assistance of stand-by counsel[1] -- Petitioner was found guilty on two indictments alleging breaking and entering in the daytime with the intent to commit a felony and one indictment alleging possession of burglary tools.  He received concurrent sentences of seven to ten years for the breaking and entering indictments. The possession indictment was placed on file with Petitioner's consent.

On May 21, 1999, Petitioner filed an appeal and, thereafter, an attorney from the Committee for Public Counsel Services was appointed to represented him.  The sole argument made by Petitioner's appellate counsel was that the search and seizure prior to Petitioner's arrest was unconstitutional.  On June 12, 2002, the Massachusetts Appeals Court affirmed Petitioner's conviction.  The Massachusetts Supreme Judicial Court ("SJC") thereafter denied Petitioner's Application for Leave to Obtain Further Appellate Review ("ALOFAR").

On August 28, 2002, Petitioner, acting *pro se*, moved for a new trial in the Massachusetts Superior Court alleging, *inter alia*, ineffective assistance of appellate counsel.  The court denied his request and Petitioner appealed that ruling to the

---

[1]  Three weeks prior to trial, Petitioner dismissed his court-appointed counsel and a different attorney was appointed as stand-by counsel.

Appeals Court.  On November 4, 2004, the Appeals Court rejected Petitioner's

arguments, *see Commonwealth v. Pelletier*, 817 N.E.2d 339, 2004 WL 2495618 (Mass.

App. Ct. Nov. 5, 2004), and on December 23, 2004, the SJC denied Petitioner's

ALOFAR, *see Commonwealth v. Pelletier*, 820 N.E.2d 258 (Mass. 2004) (table).

Petitioner filed the instant *habeas* petition pursuant to 28 U.S.C. § 2254 on January 19,

2005.  In due course, Respondent filed a motion to dismiss and Petitioner tendered his

motion for summary disposition.

B.  FACTUAL HISTORY

Typically in section 2254 cases, the factual history is derived from the highest

state court decision, and the facts contained therein are entitled to a presumption of

correctness.  *See* 28 U.S.C. § 2254(e)(1).  Here, however, the Appeals Court's decision

contained only a smattering of facts.  Accordingly, following the parties' lead, the court

has considered the following facts from the briefs the parties filed with the Appeals

Court, as summarized in Respondent's present memorandum of law.

> On October 9, 1998, at approximately 12:45 p.m.,
> Holyoke Police Officer Gary Wagner responded to a
> dispatch concerning a man acting suspiciously in the vicinity
> of 63 Sycamore Street.  The report described the man as
> white, balding and wearing a gray jacket and jeans.  Officer
> Wagner, although in uniform, drove an unmarked car.
> Officer Jan Saj, in uniform and driving a marked cruiser, also
> responded to the call.  Officer Wagner spotted . . .
> [P]etitioner, who matched the description, emerging from the
> yard at 40 Sycamore Street, about 100 yards from 63
> Sycamore Street. . . . [P]etitioner crossed the street to the
> sidewalk.  Officer Wagner pulled in front of . . . [P]etitioner
> and Officer Saj pulled in back of him.
>
> Officer Wagner got out of his car, stopped . . .

3

[P]etitioner, and asked him where he had come from. . . . [P]etitioner pointed toward the house at 40 Sycamore Street and said, "Over there." Officer Wagner asked him where he lived. . . . [P]etitioner responded, "Walnut Street." When Officer Wagner asked him what number, . . . [P]etitioner said he did not know. Officer Wagner asked . . . [P]etitioner who he was visiting at 40 Sycamore. . . . [P]etitioner answered, "The Sullivans."

Officer Wagner determined that there was nobody home at the 40 Sycamore address. An unidentified bystander volunteered that the Sullivans no longer lived at that address, that they had moved ten years earlier. A pat frisk of . . . [P]etitioner uncovered a knife from . . . [P]etitioner's right rear pocket and a screwdriver, partially exposed, from his front pocket.

While Officer Saj remained with . . . [P]etitioner, Officer Wagner proceeded to 65 Sycamore Street where the complainant, Patricia Ferreira, lived. Ms. Ferreira told Officer Wagner that, as she arrived home from doing her grocery shopping, she saw a balding, white male wearing a gray jacket and jeans coming from the front porch of her neighbor's house. She observed this person walking around the house and into the backyard. Finally, she saw him walk from the rear of the house up towards Cabot Street.

Ms. Ferreira told the officer that the owner of the house was not home. Officer Wagner investigated 63 Sycamore, noting that the inner door leading to the front porch was open and that there was a small three inch cut in the outside screen covering the porch window leading to the house. There was no damage to the front door.

Officer Wagner then walked around the house, up a small stairway, and entered another small porch in the rear of the house. There he noted pry marks on a metal storm door leading to the house. Because there were several small white chips on the floor below the pry marks, Officer Wagner concluded that the pry marks were recent. With the assistance of Ms. Ferreira, Officer Wagner contacted the owner of the house.

4

(Meanwhile, . . . [P]etitioner was being transported in the backseat of the police cruiser to 65 Sycamore Street by Officer Saj. He was not handcuffed or under arrest at this time. While being transported, . . . [P]etitioner admitted that he had been on the porch of a white house. Officer Saj then advised . . .[P]etitioner of his Miranda rights and the conversation terminated.)

Approximately five minutes later, Lux Flores, the owner of the home, arrived at the scene. Ms. Flores was shown the areas of damage. She indicated that the damage, including the cut in the front window screen, the cut in the front door screen, and the damage to the basement door were fresh. She also stated that the inner and outer doors and windows were shut when she left the house.

Officer Saj next went to the complainant's home at 65 Sycamore Street to ask whether Ms. Ferreira could identify . . . [P]etitioner. When Ms. Ferreira came to the door, Officer Saj asked her if she could help identify the person she saw on her neighbor's property. She said, "Yes, that's the gentleman that's running away from your cruiser." Officer Saj turned and observed a police officer chasing . . . [P]etitioner down the street. . . . [P]etitioner was eventually apprehended, placed under arrest and transported to the police station.

(Resp't's Mem. in Support of Motion to Dismiss (Document No. 18) at 3-5.)

## II. DISCUSSION

As a *pro se* submission, the petition is to be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Here, in essence, the petition contains two grounds for relief. In Ground One, Petitioner argues that his court-appointed appellate counsel was ineffective by not challenging either the validity of the indictments, the prosecutor's closing argument, or the sufficiency of evidence. In Ground Two, Petitioner asserts that the evidence introduced at trial was insufficient to sustain a

guilty verdict.  This court will address the two grounds in turn, after first settling on an

appropriate standard of review.  In the end, the court will conclude that neither ground

warrants *habeas* relief.

A.  STANDARD OF REVIEW

According to Respondent, the petition arises under subsection (1) of 28 U.S.C. §

2254(d) which allows for *habeas* relief if Petitioner can prove the "State court['s] . . .

adjudication" of his claims "was contrary to, or involved an unreasonable application of,

clearly established Federal law."[2]  Petitioner, on the other hand, argues that several of

his arguments were not actually adjudicated "on the merits" by the Appeals Court and,

therefore, a "*de novo*" standard of review somehow applies to those claims.  *See Fortini*

*v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001) (applying *de novo* standard of review to "an

issue that the state court did not address").

After scrutinizing the record, the court is convinced that Petitioner, his arguments

---

[2]  In full, section 2254(d) states as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).

to the contrary, is simply reasserting in this federal forum the "three claims" that were, in fact, addressed by the Appeals Court: that "(1) his first appellate attorney provided ineffective assistance by not challenging the validity of the indictments; (2) the evidence against him was insufficient; and (3) the prosecutor's closing argument was improper." *Commonwealth v. Pelletier*, 817 N.E.2d 339, 2004 WL 2495618, at *1, *rev. denied*, 820 N.E.2d 258 (Mass. 2004). Accordingly, this court, like Respondent, believes that the "AEDPA's ordinary standard for evaluating state legal determinations" applies, *i.e.*, the court must "accept" the Appeals Court's legal rulings "unless [they are] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Fortini*, 257 F.3d at 47 (quoting 28 U.S.C. § 2254(d)(1)).

As the Supreme Court has explained, a state court's decision may be "contrary to . . . clearly established Federal law" in several ways. On the one hand, "[a] state-court decision will . . . be contrary to . . . clearly established [Supreme Court] precedent if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J.). "A state-court decision will also be contrary to th[e Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 406.

Under the "unreasonable application" clause, "'a federal *habeas* court may grant the writ if the state court identifies the correct governing legal principle from [the]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (quoting *Williams*, 529 U.S. at 413 (O'Connor, J.)). The Court also "clarified that unreasonableness must be an objective standard and that an erroneous or incorrect application is not necessarily an unreasonable application." *Id.* (citing *Williams*, 529 U.S. at 410, 411 (O'Connor, J.)). At the very least, a federal *habeas* court must inquire "whether the state decision is in error," with close questions barring *habeas* relief. *Id.* *See also id.* at 35 (rejecting the argument that the *habeas* court "must review the [issues] *de novo*, rather than look to whether the state court's determination is unreasonable"); *Sepulveda v. United States*, 330 F.3d 55, 66 (1st Cir. 2003) ("[S]ection 2254 . . . requires [state] prisoners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'").

Unfortunately, Petitioner never discusses the section 2254(d)(1) standard. He merely reproduces the brief he submitted to the Appeals Court, along with a short argument that a *de novo* standard of review applies. This, in the court's estimation, is a risky strategy. Section 2254(d)(1) places the burden on Petitioner to demonstrate how the "adjudication" of his claims by the "State court" -- here, the Appeals Court's November 5, 2004 decision -- "was contrary to, or involved an unreasonable application of, clearly established federal law." *See also Bell v. Cone*, 535 U.S. 685, 693 (2002) (one purpose of AEDPA is "to prevent federal habeas retrials") (citation and

8

internal quotation marks omitted).  Petitioner has not carried that burden.  And having independelty considered the applicable standards, the court itself has determined that the Appeals Court's decision easily survives the requirements of section 2254(d)(1). The court also believes that the petition ought to be dismissed even under a *de novo* standard of review, should that standard somehow apply, because none of Petitioner's claims are meritorious.

B.  A̲l̲l̲e̲g̲e̲d̲ ̲I̲n̲e̲f̲f̲e̲c̲t̲i̲v̲e̲ ̲A̲s̲s̲i̲s̲t̲a̲n̲c̲e̲ ̲o̲f̲ ̲C̲o̲u̲n̲s̲e̲l̲ ̲(̲G̲r̲o̲u̲n̲d̲ ̲O̲n̲e̲)̲

To succeed on the ineffective assistance of appellate counsel claims raised in Ground One, Petitioner "must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense."  *Horton v. Allen*, 370 F.3d 75, 86 (1st Cir. 2004) (citing, *inter alia*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "The *habeas* court must evaluate the challenged conduct from counsel's perspective at the time[,] making every effort to eliminate the distorting effects of hindsight."  *Id.* (citation and internal quotation marks omitted).  "It must also start with the presumption that the challenged action was sound trial [-- or in this case appellate --] strategy."  *Id.* (citation omitted).

At its core, Ground One alleges that Petitioner's court-appointed appellate counsel was ineffective by not challenging three items: (1) the validity of the burglary indictments (see subsections (A), (B) and (E) of Ground One); (3) the prosecutor's closing argument (see subsection (D) of Ground One); and (3) the sufficiency of evidence (see subsection (C) of Ground One).  In the court's view, none of these arguments warrants *habeas* relief.

1. <u>Validity of the Indictments</u>

Petitioner's argument with respect to the burglary indictments has several permutations. In the main, Petitioner asserts in subsection B of Ground One that his appellate counsel should have argued that the indictments were faulty because they failed to specify the intended felony to be committed. In essence, Petitioner argues as follows: to prove a defendant guilty of burglary, the Commonwealth must prove not only that he broke into and entered a building in the daytime, but that he did so with the intent to commit a felony, *see* Mass. Gen. L. ch. 266, § 18; the indictments failed to specify the intended felony; Petitioner's appellate counsel failed to argue that the indictments should have been dismissed on that basis; counsel must then have been ineffective; counsel's ineffectiveness prejudiced Petitioner's defense; by not recognizing this, the Appeals Court unreasonably applied federal law; *ergo*, Petitioner is entitled to *habeas* relief.

In the court's view, Petitioner's analysis falters at the starting gate, if not at other points as well. As the Appeals Court noted when addressing Petitioner's appeal, "'a burglary indictment need not . . . specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony.'" *Commonwealth v. Pelletier*, 817 N.E.2d 339, 2004 WL 2495618, at *1 (quoting *Commonwealth v. Willard*, 761 N.E.2d 971, 977 (Mass. App. Ct. 2002)), *rev. denied*, 820 N.E.2d 258 (Mass. 2004). Accordingly, the Appeals Court continued, "a motion to dismiss the indictments was foredoomed." *Id.* As a result, Petitioner's appellate counsel could not have been ineffective by failing to raise this argument. *See*

10

*Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible.").  Therefore, Petitioner is not entitled to *habeas* relief on the basis of subsection B of Ground One.

The other permutations of Petitioner's argument also fail.  For example, Petitioner asserts in subsection A of Ground One that his appellate counsel was ineffective because he did not raise on appeal the alleged failure of Petitioner's original attorney to move to dismiss the indictments pretrial.  Putting aside for the moment the fact that Petitioner represented himself at trial, as well as three weeks before, *see Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"), it is clear that Petitioner is merely recasting his main, and faulty, argument.

Similarly misplaced is Petitioner's argument in subsection E of Ground One that his appellate counsel should have argued that the trial judge improperly "broadened" the indictments by instructing the jury on larceny.  That is simply not the case.  The trial judge did mention "larceny" as the "felony" Petitioner purportedly intended to commit. (To repeat: "burglary" requires that a defendant break and enter a dwelling in the daytime with the intent to commit a felony.  *See* Mass. Gen. L. ch. 266, § 18.)  But that can hardly be said to have prejudiced Petitioner's defense.  On the contrary, the trial judge's statement took away from the jury's consideration other potential felonies for which there was no evidence, *e.g.*, murder, rape, *etc.*  At bottom, therefore, it was not

11

an unreasonable application of clearly established federal law for the Appeals Court to

conclude "that the indictments were not infirm," *Commonwealth v. Pelletier*, 817 N.E.2d

339, 2004 WL 2495618, at *1, and, per force, his appellate counsel was not ineffective

with respect thereto.[3]  In this court's estimation, therefore, none of Petitioner's

arguments with respect to the indictments warrants *habeas* relief.

> 2. Prosecutor's Closing Argument

Petitioner contends in subsection D of Ground One that his appellate counsel

failed to attack as improper the prosecutor's summation.  Petitioner asserts that the

prosecutor impermissibly said the following to the jury: "So I suggest to you if the

defendant was simply on the side of the house, vomiting, because he didn't want to do

it in front of the lady [Ms. Ferreira] that she would have, I suggest to you, quite possibly

have seen him."  The Appeals Court rejected this claim, stating as follows:

> The defendant accuses the prosecutor of making
> misstatements in her closing argument.  We disagree.  *See*
> *Commonwealth v. Silva*, 401 Mass. 318, 329 (1987) (phrase
> "I suggest" is "a rhetorical device [designed] to urge the jury
> to draw inferences from the evidence favorable to [the]
> case").  Furthermore, the judge directed the jurors to use
> their "common sense, good reasoning, and good judgment."
> In light of these instructions, the jurors would not have
> concluded that the prosecutor was suggesting that the

---

[3]   It also appears, in conjunction with subsection E, that Petitioner believes his
appellate counsel was ineffective as well by not arguing that one of the breaking and
entering indictments ought have been dismissed on "double jeopardy" grounds, *i.e.*,
that he was wrongly convicted of two separate offenses for a *single act* of breaking and
entering.  Unfortunately for his cause, Petitioner appears to have misread the charges
against him.  In point of fact, Petitioner was convicted of two *separate incidents* of
burglary, presumably because the jury believed that he broke into Ms. Flores' house
not once, but multiple times.  The fact that the incidents of breaking and entering may
have occurred one right after the other is of no moment.

neighbor, Ms. Ferreira, somehow had the capacity to see through the solid structure of the house and observe the defendant standing on the far side, he says, vomiting.  The defendant has failed to show serious incompetency, inefficiency, or inattention on appellate counsel's part that deprived him of an otherwise available, substantial ground of defense in respect to a potential appellate challenge to the prosecutor's closing.  *See Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).  In short, even if the judge credited the defendant's story about vomiting there, was ample time and opportunity for the defendant to break into the back of the house.

*Commonwealth v. Pelletier*, 817 N.E.2d 339, 2004 WL 2495618, at *1, *rev. denied*, 820 N.E.2d 258 (Mass. 2004).

According to the Supreme Court, the appropriate question to ask when confronted with a prosecutor's allegedly improper closing argument is whether the prosecutor's behavior "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Put differently, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In this court's view, the Appeals Court's adjudication was neither contrary to nor involved an unreasonable application of federal law.  Petitioner has failed to establish that the challenged remarks were even improper, much less that they infected the trial with unfairness as to make the resulting conviction a denial of due process.  As a result, appellate counsel's choice not to pursue this losing claim on appeal fell within the wide range of professionally competent assistance.  *See Strickland*, 466 U.S. at

13

690, 694. Accordingly, this court believes, Petitioner is not entitled to *habeas* relief on the basis of subsection (D) of Ground One.

     3. <u>Sufficiency of the Evidence</u>

     Finally, in subsection (C) of Ground One, Petitioner argues that his appellate counsel failed to argue that the trial court improperly denied a motion for a required finding of not guilty. (As discussed below, he also raises this allegation as an independent claim of judicial error.) The Appeals Court addressed and rejected this claim as follows:

> The motion judge was well within his discretion to reject the defendant's challenge and conclude that the evidence was more than sufficient to prove guilt beyond a reasonable doubt. The neighbor who called the police saw the defendant exiting the subject house near high noon on the date in question. The front porch screen window had been cut; there were fresh pry marks by the rear door; and an interior door had been ripped off its hinges. When stopped by the police officers, the defendant had a screwdriver and knife in his pants pocket. It is settled law that circumstantial evidence is sufficient to sustain a guilty verdict. *See, e.g.*, *Commonwealth v. Merola*, 405 Mass. 529, 533 (1989).

*Commonwealth v. Pelletier*, 817 N.E.2d 339, 2004 WL 2495618, at *1, *rev. denied*, 820 N.E.2d 258 (Mass. 2004). Once again, this court believes that the Appeals Court's adjudication was neither contrary to nor involved an unreasonable application of federal law.

     Under section 2254(d)(1), the focus of a *habeas* court on a sufficiency challenge is the reasonableness of the state court decision. *See Hurtado v. Tucker*, 245 F.3d 7, 18 (1st Cir. 2001). Here, the Appeals Court detailed the evidence of guilt and found

that evidence, albeit circumstantial, more than sufficient to support Petitioner's conviction. In particular, the Appeals Court cited the following: "[t]he neighbor who called the police saw [Petitioner] exiting the subject house near high noon on the date in question[; t]he front porch screen window had been cut; there were fresh pry marks by the rear door; . . . an interior door had been ripped off its hinges[; and, w]hen stopped by the police officers, [Petitioner] had a screwdriver and knife in his pants pocket."

As required, the Appeals Court considered the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also Nadworny v. Fair*, 872 F.2d 1093, 1102 (1st Cir. 1989); *Commonwealth v. Latimore*, 393 N.E.2d 370, 374 (Mass. 1979) (both noting similar standard under Massachusetts law). Appellate counsel's decision, in light of the evidence, to forego a futile sufficiency argument did not amount to ineffective assistance. Accordingly, in this court's view, Petitioner is not entitled to *habeas* relief on the basis of subsection (C) of Ground One.

C. SUFFICIENCY OF THE EVIDENCE (GROUND TWO)

Ground Two, Petitioner's direct sufficiency of the evidence claim, can be dealt with in short order. As indicated, this court believes that Petitioner's sufficiency argument was doomed since there was ample circumstantial evidence to support the conviction. Accordingly, the court also concludes that the state court's adjudication of Petitioner's direct sufficiency claim was neither contrary to, nor involved an

unreasonable application of, federal law.  As a result, in this court's view, Petitioner is

not entitled to *habeas* relief on the basis of Ground Two.

III.  C<small>ONCLUSION</small>

For the reasons stated, the court recommends that Respondent's motion to

dismiss be ALLOWED and that Petitioner's cross motion for summary disposition be

DENIED.[4]

DATED: January 20, 2006

   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[4]  The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.