UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT PELLETIER,
    Petitioner,

Vs.

LOIS RUSSO, SUPERINTENDENT,
    Respondent,

Civil Action No. 05-30014-MAP

## PETITIONERS OBJECTION TO MAGISTRATES REPORT AND RECOMMENDATION

    Now comes the Petitioner, Robert Pelletier, pro se. The petitioner would formally object to Magistrates report and recommendations in there entirety under the provisions of Rule 3(b), of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

**FACTUAL HISTORY:**

    The Magistrate writes the following:

> "Typically in section 2254 cases, the factual history is derived from the highest state court decision, and the facts contained therein are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). Here, however, the Appeals Court's decision contained only a smattering of facts. accordingly, following the parties lead, the court has considered the following facts from the briefs the parties filed with the Appeals Court, as summarized in Respondent's present menorandum of law. "

See Magistrates Report at page (3).

    The Petitioner, in his cross-motion for summary disposition argued that review of petitioners, petition should be de novo.

As reasons for that argument, the petitioner argued that the State court did not review the petitioners pleadings at all. The Petitioner argued at page 2, the following:

> "A "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593 (1982)."

The Petitioner then stated in the first paragraph on page 3, the following:

> "Neither the trial court (judge) nor the Appeals Court, ever made any findings of fact in this matter. In fact, the only person that did make a finding of fact, was the attorney for the Commonwealth who wrote the "Commonwealth's Memoramdum of Law in Support of its Motion for Summary Disposition" (A.C. No. 03-P-1494). See respondents (Supplemental Answer) at ¶2."

The Petitioner never conceded, that the facts summarized by the Commonwealth's attorney were correct. The Magistrates report states at page 5, second paragraph the following sentence: "Approximately five minutes later, Lux Flores, the owner of the home, arrived at the scene." If the Magistrate had taken the time to read the Petitions "Statement of the Facts" included within petitioners appellate brief to the Appeals Court, and or, the trial transcript that was included with the petitioners motion for summary disposition. He would of realized that line was incorrect. The relevancy of that line will become apparant in the dicussion on the denial of the "Sufficiency of the Evidence" argument. The Petitioner would also argue that the "Factual History" recited by the Magistrate is adapted to fit

2

the Commonwealth's theory of the case. And is not a true an accurate summarization of the "Factual History."

**STANDARD OF REVIEW:**

The Magistrate writes:

"According to Respondent, the petition arises under subsection (1) of 28 U.S.C. § 2254(d) which allows for habeas relief if Petitioner can prove the "State court[s] ... adjudication" of his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law. ... Petitioner, on the other hand, argues that several of his arguments were not actually adjuicated "on the merits" by the Appeals Court and, therefore, a "de novo" standard of review somehow applies to those claimes. See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (applying de novo standard of review to "an issue that the state court did not address").
   After scrutinizing the record, the court is convinced that Petitioner, his arguments to the contrary, is simply reasserting in his federal forum the "three claims" that were, in fact, addressed by the Appeals Court: that "(1) his first appellate attorney provided ineffective assistance by not challenging the validity of the indictments; (2) the evidence against him was insufficient; and (3) the prosecutors closing argument was improper." Commonwealth v. Pelletier, 817 N.E.2d 339, 2004 WL 2495618, at *1, rev. denied, 820 N.E. 2d 258 (Mass. 2004). Accordingly, this court, like Respondent, believes that the "AEDPA's ordinary standard for evaluating state legal determinations" applies, i.e., the court must "accept" the Appeals Court's legal rulings "unless [they are] 'contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court.'" Fortini, 257 F.3d at 47 (quoting 28 U.S.C. § 2254(d)(1) (See at pages 6 and 7.)             "

The Magistrate then goes on to describe the "contrary to" and the "unreasonable application" standards. (See at pages 7 and 8.)

In summation, the Magistrate writes:

"Unfortunately, Petitioner never discusses the section 2254 (d)(1) standard. He merely reprodues the brief he submitted to the Appeals Court, along with a short argument that a de novo standard of review applies. This, in the court's estimation, is a risky strategy. Section 2254(d)(1) places the burden on Petition to demonstrate how the "adjudication" of his claims by the "State court" -- here, the Appeals Court's November 5, 2004 decision -- "was contrary to, or involved an unreasonable application of, clearly established

3

federal law." See also Bell v. Cone, 535 U.S. 685, 693 (2002) (one purpose of AEDPA is "to prevent federal habeas retrials" )(citation and internal quotations marks omitted). Petitioner has not carried that burden. And having independently concidered the applicable standards, the court itself has determined that the Appeals Court's decision easily survives the requirement of section 2254(d)(1). The court also believes that the petition ought to be dismissed even under a de novo standard of review, should that standard somehow apply, because none of Petitioner's claims are meritorious.               "
(See at pages 8 and 9).

The Massachusetts Appeals Court issued a one page decision in the petitioners case. Commonwealth v. Pelletier, 62 Mass.App.Ct. 1109 (2004). In that decision the court discusses only two and one half of the five underlying claims to the petitioners ineffective assistance of appellate counsel claim. The court writes:

> "Indictments. "[A] burglary indictment need not ... specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony." Commonwealth v. Willard, 53 Mass.App.Ct. 650, 656 (2002). We agree with the motion judge that the indictments were not infirm. Thus a motion to dismiss the indictments was foredoomed.
>
> Sufficiency of the evidence.    The motion judge was well within his discretion to reject the defendant's challenge and conclude that the evidence was more than sufficient to prove guilt beyond a reasonable doubt. The neighbor who called the police saw the defendant exiting the subject house near high noon on the date in question. The front porch screen window had been cut; there were fresh pry marks by the rear door; and an interior door had been ripped off its hinges. When stopped by the police officers, the defendant had a screwdriver and knife in his pants pocket. It is settled law that circumstantial evidence is sufficient to sustain a guilty verdict. See e.g. Commonwealth v. Merola, 405 Mass. 529, 533 (1989).
>
> Closing arguments.    The defendant accuses the prosecutor of making misstatements in her closing argument. We disagree. See Commonwealth v. Sliva, 401 Mass. 318, 329 (1987) (phrase "I suggest" is a rhetorical device [designed] to urge the jury to draw inferences from the evidence favorable to [the] case"). Furthermore, the judge directed the jurors to use their "common sence, good reasoning, and good judgement."
> In light of these instructions, the jurors would not have concluded that the prosecutor was suggesting that the

4

neighbor, Ms. Ferreira, somehow had the capacity to see through the solid structure of the house and observe the defendant standing on the far side, he says, vomiting. The defendant has failed to show serious incompetancy, inefficiency, or inattention on appellate counsel's part that deprived him of an otherwise available, substantial ground of defense in respect to a potential appellate challenge to the prosecutor's closing. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). In short, even if the judge credited the defendant's story about vomiting there, was ample time and opportunity for the defendant to break into the back of the house."

The Petitioner, in his cross-motion for summary disposition writes under the heading (A. Standard of Review for the District Court). the following:

> "The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Williams v. Taylor, 529 U.S. 362, 399 (2000) (internal quotations omitted). However, "AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings." Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001), cert denied, 535 U.S. 1018 (2002); see also Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003) If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo. Id."
> (See at page 2).

The Massachusetts Appeals Court, in their one page decision did not concider any of the petitioners federal claims. See Fortini at page 47.

> "AEDPA's strict standard of review only applies to a "claim that was adjudicated on the merits in state court proceedings." 28 U.S.C. § 2254(d). Here, the federal claim was never addressed by the state courts. All of the cases that have touched on this problem (none is directly on point) assumes that the statute applies only when the state court decided the federal issue. ... After all, AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address. Cf. Williams v. Taylor, 529 U.S. 362, 402-06

5

120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).                              "
Compare Allison v. Ficco, 388 F.3d 367, 369 (C.A.1(Mass.)2004) ("Because the state courts squarely addressed the federal constitutional issue we engage in defferential and not de novo review.") The Magistrates decision not to review de novo, as the petitioner argued in his cross-motion for summary disposition. Is contrary to settled First Circuit precedent. The Magistrate writes "The court believes that the petition ought to be dismissed even under a de novo standard of review, should that standard somehow apply, because none of Petitioner's claims are meritorious." See at page 9. The petitioner would question, that if the court did not make a de novo review. How the court would be able to make a determination that the petitioners claims are unmeritorious. The petitioner would like to make one final point before discussing the actual arguments. The petitioner understands that the ineffective assistance of appellate counsel claim would be reviewed under the "contrary to" or the "unreasonable application" standards. The petitioners de novo argument goes to the underlying claims within the ineffective claim.

## Claim A.

>Appellate counsel failed to claim on two separate grounds that the defendant's pre-trial counsel was ineffective for not filing a pre-trial motion to dismiss the defendant's two separate breaking and entering indictments.

The Petitioners breaking and entering indictments were identical, and stated as follows:

>"[Robert Pelletier] defendant herein, of Holyoke in the county of Hampden, on or about October 9, 1998, at Holyoke in the County of Hampden, did break and enter in the daytime the

6

```
        dwelling house of Luz Flores situated in said Holyoke, in
        said County, with intent therein to commit a felony.        "
```

**Ground one, Double Jeopardy**

The essence of the petitioners argument is that the identical indictment violates the Double Jeopardy Clause of the Fifth Amendment. In support the petitioner cited to the following Supreme Court decisions:

United States v. Dixon, 509 U.s. 688, 704 (1993); Ex parte Lange, 18 Wall. 163, 173 (1874); Schiro v. Farley, 510 U.S. 222, 229-230 (1994); Price v. Georgia, 398 U.S. 323, 326 (1970); Helvering v. Mitchell, 303 U.S. 391, 399 (1938); In re Snow, 120 U.S. 274 (1887) Brown v. Ohio, 432 U.S. 161, 169 (177).

The Massachusetts Appeals Court, did not issue a responce to the petitioners argument.

**Ground two, failure to state the intended felony, in the indictment**

The petitioner argued, that under the Constitution of the United States, amendments five and six. That the state of Massachusetts is required to list every element of the offense in the indictment. The "intent to commit a felony" portion is an element of the offense and that by not listing the actual felony the indictment was infirm and counsel should of moved to dismiss it. The petitioner listed the Fifth and Sixth amendments as grounds and supported the argument with the following Supreme Court precedent:

Russell v. United States, 369 U.S. 749, 763-764 (1962); Hamling v. United States 418 U.S. 87, 117 (1974); Jones v. United States 526 U.S. 227, 230 (1999); In re Winship, 397 U.S. 358, 369 (1970).

7

The state of Massachusetts used Commonwealth v. Willard, 53 Mass.App.Ct. 650, 656 (2002). To state, that when charging a defendant in a breaking and entering indictment. The state does not have to include the actual felony. That if the defendant, wants that information he should file a "bill of particulars." The petitioner went through the history of the Willard decision and categorically showed how it was mistakenly decided, and violated not only Supreme Court precedent but the constitution itself. The Massachusetts Appeals Court did not address the petitioners federal question. See Fortini, at page 47.

### Claim B.

> Appellate counsel failed to argue that the defendant was denied adequate notice of the charges against him where the breaking and entering indictments failed to specify the intended felony to be committed.

The petitioners breaking and entering indictment were identical and failed to inform the petitioner of exactly what felony, that it was, he intended to commit. See infra at pages 6 and 7. The Appeals Court and the Magistrate categorized this argument, as the same as the preceding argument considering the violation of petitioners constitutional rights under the double jeopardy clause and his rights to plead an acquittal or conviction in bar of future prosecution for the same offence. And the infirmity of the indictment, for not listing all the elements of the offense as required by the constitution.

The notice requirement, is a separate argument in itself. The petitioner would freely admit that the two arguments are at times intertwined. And that the petitioner used the same Supreme

8

Court precedent to support the foundation of both arguments. See Russell v. United States, 369 U.S. 749, 763-764 (1962); Hamling v. United States, 418 U.S. 87, 117 (1974).

Where this argument differs, is in the judicial history of Commonwealth v. Willard, 53 Mass.App.Ct. 650, 653 (2002). The Court in Willard cites to Commonwealth v. Porcher, 26 Mass.App.Ct. 517, 521 (1988). The Court in Porcher, in turn, relied upon Commonwealth v. Wainio, 1 Mass.App.Ct. 866 (1974). The Court in Wainio then relied upon Commonwealth v. Lewis, 346 Mass. 373, 377-378 (1963). For the proposition that if a defendant, "wished to be apprised of a particular felony intended to be committed ... he should have availed himself of the remedy ... of a motion for a bill of particulars." Wainio, at 867. The petitioner did file a "bill of particulars" requesting the "time, place, and manner for the above referenced matters." See record appendix, at page 32, attached to the petitioners Writ of Habeas Corpus. The state of Massachusetts never responded to the petitioners "bill of particulars." See record appendix, Hampden Superior Court, Docket Entry Sheet, pages 4-12. Also attached to petitioners Writ of Habeas Corpus. If the petitioner was not given notice, through the indictment nor through a requested bill of particulars. Then the petitioner was not given notice of the charges against him, in violation of the Constitution of the United States and also clearly established Supreme Court precedent.

The Massachusetts Appeals Court did not respond to this argument. Therefore, they did not address the petitioners federal question. See Fortini, at page 47.

9

Claim E.

> Appellate counsel failed in that he did not argue that the petitioners two breaking and entering indictment were impermissble and constructively amended and broadened by the trial judge during his instruction to the jury.

The Magistrate, like the Massachusetts Appeals Court, did not adequately, or at all review this argument. Instead the Magistrate and the Appeals Court, combined argument (A),(B), and (D). Then both the Magistrate and the Appeals Court only answered argument (A), without even deciding the Federal questions. The petitioner will admit, that on the surface the three arguments would seen to be connected. When the surface is broken, and the underlying constitutional issues are examined. There is a separate Federal issue involved in each separate argument.

An indictment was brought before the Grand Jury. That indictment did not contain any explicit statement of conduct that a person could infer that larceny was the intended felony to be committed. The petitioner cites several cases in argument (A) where the state charged individuals with crimes that charged intent. In those crimes the indictment either contained a statement with "the words of the statute itself" Hamling v. United States, at 87, and also stated "to wit, [which] is to make what follows an essential element of the offense." United States v. Leichtnam, 948 F.2d 370, 377-78 (7th Cir.1991). Or, indicted separately for the underlying felony See Commonwealth v. Lauzier, 53 Mass.App.Ct. 626, 629 (2002); Commonwealth v. Cruz, 430 Mass. 182, 189 (1999) ("Here there were separate indictments on all potential underlying felony counts.)"

10

In argument (E) the petitioner specifically argued that because the petitioner was never given notice of the intent component of the indictment. That when the trial judge instructed the jury that larceny formed the intent component. That instruction constructively amended and broadened the petitioners indictment. The petitioner supported the argument with several Supreme Court decisions that are clear on the subject. See United States v. Miller, 471 U.S. 130, 135 (1985); Stirone v. United States, 361 U.S. 212, 216 (1960); Ex Parte Bain, 121 U.S. 1 (1887). The petitioner argued that the error is fatal. That it is reversible "per se." Stirone at 216. The First Circuit is in accord. See United States v. Fisher, 3 F.3d 456, 463 (C.A.1 (Mass. 1993) ("A constructive amendment is considered prejudicial per se and grounds for reversal of a conviction."); Haines v. Risley, 412 F.3d 285 n.4 (C.A.1(N.H.)2005) ("The case law stemming from Stirone v. United States ..., has led a number of circuits, including ours, to adopt such a per se theory for certain deviations between what is charged in the indictment and what is proved at trial.") case citation omitted).

The Massachusetts Appeals Court did not respond to this argument. Therefore, they did not address the petitioners federal question. See Fortini, at page 47.

**Claim (D).**

> Appellate counsel failed to argue several improper statements made by the prosecutor during her closing argument to the jury.

The only witness who could of saw the defendant's actions, were the next door neighbor who called the police. Ms. Ferreira

allowed to suggest anything she wants. The second statement was not even done under the "I suggest" theory. The petitioner argued that it was impossible for him to commit the crime. The petitioner is seen by the next door neighbor coming off the front porch. He then goes to the opposite, or cemetery side of the house. After a five minute period he comes back into site of the neighbor, and walks up the street. The side of the house the neighbor see's the petitioner enter, is the only side of the house that isen't broken into or attempted to have been broken into. The petitioners whole argument was that, it was impossible for him to have committed the crime. Ms. Ferreira stated, "I can see into their backyard." She was then asked by the prosecutor, "And you didn't see anything? Ms. Ferreira answered, "No." If the petitioners defense was that he couldn't have committed the crime and the neighbor, Ms. Ferriera testify's that she didn't see the petitioner at the site of the points of the actual breakin. Then the prosecutors statement had no basis in the evidence. The prosecutor opened the door for the jury to draw an inference that had no basis to be drawn from. The trial judge should of recognized the prejudicial effect on the petitioners defense. And instructed the jury that the prosecutor was mistaken and that they should exclude those statements from there consideration.

   The petitioner correctly cited to Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) that the prosecutor's behavior "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. 643. The Magistrate

13

writes "[p]ut differently, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Citing, Smith v. Phillips, 455 U.S. 209, 219 (1982). The question under federal law then is, was it fair to the petitioner, that the prosecutor put him at the entry points of the breakin. Misstating her own prosecution witness. Who in fact stated, that she did not see the petitioner at any of the entry points during the five minute period that the State alleges the crime took place.

The State of Massachusetts did not address the petitioners federal question. See Fortini, at page 47.

**Claim (C).**

> Appellate counsel failed to argue that the trial court erred, when it denied the defendant's motion for a required finding of not guilty at the close of the commonwealth's case and also at the close of all the evidence.

In the petitioners argument to the Massachusetts courts, he identified the correct federal precedent:

> "The test for deciding whether a motion for a required finding was properly denied is "whether, after viewing the evidence (and fair inferences therefrom) in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979), (emphasis in original). "

See Hurtado v. Tucker, 245 F.3d 7, 12 (C.A.1(Mass.)2001) (Commonwealth v. Latimore, applying test articulated by the Supreme Court in Jackson v. Virginia) internal citations omitted).

14

The Commonwealth in its memorandum of law in support of its motion for summary disposition, wrote the following:

> "The motion judge summarily rejected the defendant's sufficiency argument, (Add./13, 14 ["The evidence was sufficient to support the verdict"]), and this Court should as well. The neighbor who called the police saw the defendant exiting the front porch of 63 Sycamore Street at around noontime on October 9, 1998. (TR. I/67-68, 73). The owner of that house, Luz Flores, had locked her home when she left for work that morning. (Tr. I/128-129). The front porch screen window had been cut, there were fresh pry marks by the rear door, and an interior door had been ripped off its hinges. (Tr. I/86-90, 110-120). The police spotted the defendant emerging from the yard at 40 Sycamore Street. (Tr.I/80). He had a screwdriver and knife in his pants pocket. (Tr. I/83). This evidence was more than sufficient.     "

Now compare with the Appeals Court decision, infra at page 4. The Appeals Court essentially wrote their decision off of the Commonwealth's motion. The Court cites to one case, Commonwealth v. Merola, 405 Mass. 529, 533 (1989). The court stated: (It is settled law that circumstantial evidence is sufficient to sustain a guilty verdict.) At know time did the Appeals Court make an analysis of the facts. And then put those facts and possible inferences to every element of the breaking and entering indictments. Nevermind, that they didn't even mention the standards of review.

**Testimony of Patricia Ferreira**

> "(Q). Okay. Now, when you said that this man walked around to the back of the house, the path he took going around to the back of the house, would that have been the side closest to your house or fuethest away? (A). Furthest. (Q). Okay. so he went around the side that -- near the fence? (A). Right. (Q). And you said that you were in your kitchen looking out the window? (A). [Witness nodding] (Q). What if anything, did you see? (A). Well, I can see their backyard, and I can see most of the cemetry on the other side. (Q). Okay. And you didn't see anything? (A). No. (TR. 1:71)     "

15

On cross-examination by the petitioner, Ms. Ferreira testifies as follows:

> "(Q). This the back of Ms. Flores's house? (A). Yes. (Q). At any point did you see the defendant? (A). No. (Q). Now in a five-minute period you didn't see the defendant in any of these points? (A). No, I did not. (Q). Now, you were suspicious of the defendant, were you not? (A). Yes, I was. (Q). This window here they allege I broke through, the defendant broke through, you didn't see him at that window? (A). No. (Q). Did you see him go on the porch? (Q). No, I did not. (Q). No. When the defendant came off the front porch, did he look at you? (A). Yes. (Q). So he seen you and you seen him? (A). Yes. (Q). And he walked out. Now, when he walked back, did he see you again? (A). Yes. (TR. 1:76-77)"

**Testimony of Gary Wagner**

On cross-examination Officer Wagner testified as follows:

> " (Q). How long was it from the moment you stopped the defendant untill the defendant was brought down to what -- is it 63 Sycamore? (A). I'd say about ten minutes. (Q). So you went on the front porch and -- can I use your photo? (Q). And is this the screen, the cut? (A). Yup, that's the outer screen. There's a little slice over here. (Q). Is that a typical cut for a burglary? Ms. Pisano: Objection. The Court: Sustained. (Q). All right. You came off the porch, you went between Mrs. Ferreira's house and Mrs. Flores house; is that correct? (A). Yes, I did. (Q). What did you observe on the way around the house? (A). At that time nothing. (Q). So you didn't observe this window here, the screen pulled up and the window pushed in? (A). I didn't, no. (Q). But you walked by it. (A). Yah.
>
> (Q). Now, this is the back door, right, that was entered through the cellar; is that not correct? (A). I believe it was, yes. (Q). Now, these stairs, they jet out how far, because you can tell the railing here is flush with the house -- (A). Yes, and -- (Q). -- so these stairs must stick out -- (A). They come out. (Q). -- 4 feet, 5 feet? (A). about, yah, that's your standard. (Q). So when you walked behind here with your peripheral vision, you didn't see that cellar door? (A). No. (Q). This a police report that says the incident occurred at 11:26? (A). That's correct. That's the time of the call. (Q). So it didn't take you what, minute to respond? (A). I'd say about a minute. (Q). And it took 10 minutes to bring the defendant from the top of Sycamore down to the botton of Sycamore. (A). About that. Yes. (Q). The defendant was booked in at 12:18. (A). That's

16

about right. Yes, I did my report at 12:43 (TR. 1:94-104)"

**Testimony of Lonnie Westbrook**

On cross-examination by the petitioner, Officer Westbrook testified as follows:

"(Q). At 40 Sycamore Street you checked the house for damage? (A). Signs of a break. (Q). Were there any signs? (A). No. (Q). When the defendant was brought to 63 Sycamore, you went immediately afterwards? (A). You mean when you were brought to 63? (Q). Yah. (A). I don't know if immediately, I went some time during that, yes. (Q). And how long were you there? (A). 10, 15 minutes. I can't recall exactly. (Q). Did you encircle the house? (A). Yes. I walked -- I walked in in there also. The front of the porch. (Q). What damage did you find? (A). I didn't find any damage there. " (TR. 1:106-107)

**Testimony of Jan Saj**

On direct examination by the prosecutor, Officer Saj testified as follows:

"(Q). Okay. And if you recall what were the areas where you personally witnessed some damage to the house? (A). the first area was from the sidewalk area, was, like, a front porch, enclosed porch. And then as you walked in, there was a screen that had a tear in it, like a hole, like a minor gap, not to big. (Q). Okay. And then did you walk around the house? (A). Yes, ma'am, to the southern part of the house which is face-to-face with the witnesse's home. (Q). Well, I'm going to ask you to draw your attention to the chalkboard. You see where Number 65 and 63? (Q). Yes, ma'ma. (Q). And if that's Sycamore Street right at the top of the chalkboard, where would this -- when you said you walked around the side of the house. (A). Okay, The first -- the first area where -- this is, like, an enclosed -- can I draw on this? (Q). That would be fine. (A). The first area where there was screen damage was around here. The second location as we walked around because this is the sidewalk area, this is the screen, there was a window that was open and a screen pushed in or vice versa. Excuse me. (Q). Why don't you explain what was there? (A). There was, like, a -- a waist leval high window; and it had a screen on it. I forget which one was pushed in but that was -- that was also tampered with. That was about, you know, you could almost step into it or climb into it. That was -- (Q). Would that be going into what part of the house, do you (A). I think that's into the basement. (Q). All right.(A). And this -- the witness -- the lady that we spoke with.

17

>(Q). Miss Ferreira? (A). After that -- right. She lives in this house, that's what I'm saying, it's face-to-face with with this house. Now, there's a set of stairs that go up into the entrance of the house, the first leval, and there was a door here that had pry marks where the piston meets the -- meets the side of the wood, and there were pry marks right at the -- at the lock area above the staircase, up in that enclosed little porch area that you walked in order to get upstairs. Beyond that, as you walked around, this area here has, like, a -- had, like, a door, like, a panel door, that was -- pry marks were evident on the the side also, like, where the door would meet the -- the area -- there would be, like, a pry mark there, so as you open that, that was indicative of being forced. (Q). Was the door -- was that -- you said that kind of plywood door, was that open when you saw it? (A). It was shut, but it was evident that it was -- that it was tampered with because of that pry mark -- (Q). Are you certain that was shut when you saw it? (A). I'm not a hundred percent sure, but I'm pretty sure it was almost closed. (Q). Was Miss Flores with you when you witnessed this for the first time? (A). Oh, when she came with me -- excuse me. For the first time, it was shut. When I was with her, I -- I -- it was -- I left it open.         "
>(TR. 1:110-113)

**Testimony of Luz Flores**

On cross-examination by the petitioner, Miss Flores testified as follows:

>"(Q). Just one other thing. Was anything stolen? (A). No. there wasn't anything stolen.

The first question to be answered, is de novo review is it required under the circumstances of this case. The petitioner would argue, that they are. Even if the Court would decide that AEDPA's standard is the correct standard of review. The petitioners argument would still prevail. The First Circuit has set the precedent for sufficiency of the evidence claims in its decision, Hurtado v. Tucker, 245 F.3d 7 (C.A.1(Mass.)2001). Hurtado suggested the following guidelines to be used in making the evaluation of objective unreasonableness under § 2254(d)(1): (1) The focus of the inquiry is on the state court decision;

18

The state court did not make a decision as to the federal aspect of petitioners argument.

(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to the "totality of the evidence" in evaluating the state court's decision;

The petitioer would argue that the Magistrate, did not look into the "totlity of the evidence" in evaluating the state court's decision.

(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

The state court did not consider any portion of the petitioners argument. ( Inferences as to intent).

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable;

The state court did not consider any aspect of the petitioners argument. Therefore, they could not have possible applied the appropriate standard to petitioners argument.

**Conclusion**

If the court considers the testimony of the commonwealth's witnesses objectively. The court would find that the petitioner could not have possible committed the crime. It was impossible for the petitioner to commit the breakin's also there was no

19

Felony committed. That is why the felony portion was left off of the indictment  The commonwealth did not have a felony, so they left that portion blank. A breaking and entering charge has three elements. A breaking, a entering, and a intent to commit a felony. The commonwealth's evidence was lacking. The petitioner should of been acquited by the court. The Appeals Court also should have entered a judgement of acquital on the record and immediately released the petitioner on double jeopardy grounds. See argument (2) , citing Monge v. California, 524 U.S. 721 (1998); Burks v. United States, 437 U.S. 1, 18 (1978); Samlis v. Pennsylvania, 476 U.S. 140, 142 (1986).

The petitioner would ask, that the District Court Judge, disregard the Magistrates recommendations. And that the Court conduct a "de novo" review of the petitioners, petition.

                                        Respectfully submitted,
                                        by the petitioner,

Dated: January 31, 2006                 _____
                                        Robert Pelletier, pro se
                                        Souza-Baranowski Correctional Center
                                        Harvard Road
                                        P.O. Box 8000
                                        Shirley, Massachusetts 01464-8000

testified for the Commonwealth, as follows:

> "(Q). Okay. Now, when you said that this man walked around to the back of the house, the path he took going around to the back of the house, would that have been the side closest to your house or furthest away? (A). Furthest. (Q). Okay. So he went around the side that -- near the fence? (A). Right. (Q). And you said that you were in your kitchen looking out the window? (A). [Witness nodding] (Q). What if anything, did you see? (A). Well, I can see their backyard, and I can see most of the cemetery on the other side. (Q). Okay. And you didn't see anything? (A). No. (TR. 1:71)"

The prosecutor in her closing argument mistates the evidence twice:

> "[S]o I suggest to you if the defendant was simply on the side of the house vomiting because he didn't want to do this in front of the lady that she would -- I suggest to you quite possible have seen him." (TR. 2:19) Second, "she said once you get back to the cellar area, she cannot see." (TR. 2:19)"

At this point the petitioner objects. The judge states in open court, "Mr. Pelletier, it's inappropriate to object during the closing argument. If you have an objection you can address it to me after the arguments are completed." (TR. 2:20)

> The prosecutor immediately repeates the following:

> "[B]ut the area she told you she couldn't see was right in the back cellar area and you heard the defendant was back there for approximately five minutes." (TR. 2:20)

After the completion of the prosecutor's argument, the petitioner renews his objection. The petitioner states that the prosecutor mistated several facts. The trial judge replies:

> "that's -- that's a matter for the jury. Their recollection of the evidence, their recollection of the evidence will control there." (TR. 2:31

The petitioers argument, cites to numerous state cases that state what, and what cannot be done during closing argument. The State argued one state case to suggest that the prosecutor is

12