UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
                              )
                              )
ROBERT PELLETIER,             )
      Petitioner/Appellant,   )
                              )
Vs.                           )    Civil Action No. 05-30014-MAP
                              )
LOIS RUSSO, SUPERINTENDENT,   )
      Respondent.             )
                              )
                              )
_____)
```

## NOTICE OF APPEAL AND REQUEST FOR
## CERTIFICATE OF APPEALABILITY

Now comes the Appellant, Robert Pelletier, pro se in the
above=entitled matter. And humbly requests of this Honorable
Court, that it issue a certificate of appealability. The
Appellant would incorperate by reference, the appellants
objection to the magistrates report and recommendation.

### CERTIFICATE OF APPEALABILITY
### STANDARD OF REVIEW:

To obtain a certificate of appealability, appellant "must
make a substantial showing of the denial of a constitutional
right." 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockell, 537
U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 483
(2000). In order to do so, Appellant must demonstrate
"reasonable jurists could debate whether (or, for that matter,
agree that) the petition should have been resolved in a
different manner or that the issues presented were adequate to

deserve encouragment to proceed further." Miller-El, 537 U.S.

at 336, (quoting Slack, 529 U.S. at 484).

### ISSUE ONE
### INEFFECTIVE ASSISTANCE OF APPEALATE COUNSEL:

The Appellants first issue was that his appealate counsel

was ineffective in preparing the appellants appealate brief.

The Appellant threwout the post-appealate process argued five

underlying issues. (A through E) The Massachusetts Courts and

the Federal Magistrate broke the appellants arguments into

three separate arguments, connecting arguments (A),(B), and

(E), into one general argument. Those three argument concern

the lack of specificality in the appellants (breaking and

entering indictments).

### THE INDICTMENTS
### ARGUMENTS (A),(B),(E):

The appellants initial two indictments, charging breaking

and entering in the daytime, stated as follows:

> "Robert Pelletier defendant herein, of Holyoke in the
> County of Hampden, on or about October 9, 1998, at
> Holyoke in the County of Hampden, did break and enter
> in the daytime the dwelling house of Luz Flores situated
> in said Holyoke, in said County, with intent therein to
> commit a felony.                                        "

See record appendix at pages 1, 2.

In argument (A), the appellat broke down the argument

into two sections. Section (i). the appellant argued that the

appellants pre-trial counsel should of moved to dismiss the

second indictment on double jeopardy grounds. When two acts

violate the same statute, as in the present case. The Supreme

Court has distinguished between a statute that punished a

2

continuous offense and one that punishes distinct acts. See
Blockburger v. United States, 284 U.S. 299, 303 (1932) (two
drug sales to same person on different days punishable as
separate offenses). The Court looked to see if lawmakers had
intended to criminalize each act. " 'The test is whether the
individual acts are prohibited, or the course of action which
they constitute. If the former, then each act is punishable
separately. ... If the latter, there can be but one penalty.'"
Id. at 302, (quoting Wharton's Criminal Law § 34 n. 3 (11th ed.
1912)).

As to the requisite criminal intent, the appellant would
state that its impossible to have two separate intents to commit
the same felony. Compare McCullough v. Bennett, 413 F.3d 244,
247 (C.A.2(N.Y.)2005) ("Rather, the test is wether separate
acts were committed with the requisite criminal intent).
Pre-trial counsel should of moved to dismiss the second
indictment. Appealate counsel also failed by not including
this argument in the appellants, appealate brief.

In section (ii). of argument (A), the appellant argued
that pre-trial counsel. Should of also moved to dismiss the
indictments because they both lacked an essential element of
the offense. What the actual felony was. Compare Valentine v.
Konteh, 395 F.3d 626, 630-631 (C.A.6(Ohio)2005) ("In granting
Valentine the writ, the District court relied upon Russell v.
United States, 369 U.S. 749 ... (1962), and found that the
Ohio Court of Appeals had unreasonably applied its due process
principles in Valentine's appeal. In Russell, the Supreme

3

Court put forth the criteria by which the sufficiency of an
indictment is to be measured:

> These criteria are, first, whether the indictment
> "contains the elements of the offense intented to be
> charged, 'and sufficienctly apprises the defendant of
> what he must be prepared to meet,"' and, secondly,"
> 'in case any other proceedings are taken against him
> for a similar offense whether the record shows with
> accuracy to what extent he may plead a former acquittal
> or conviction."'

369 U.S. at 763-764, ... Thus, an indictment is only sufficient
if it (1) contains the elements of the charged offense, (2)
gives the defendant adequate notice of the charges, and (3)
protects the defendant against double jeopardy. (FN1) (That
note cites to Hamling v. U.S. 418 U.S. 87, 118 (1974). While
the federal right to a grand jury indictment has never been
found to be incorperated against the states, see Hurtado v.
California, 110 U.S. 516, 534-535 ... (1884), courts have
found that the due processs rights enuciated in Russell are
required not only in federal indictments but also in state
criminal charges. See De Vonish v. Keane, 19 F.3d 107, 108
(2d Cir. 1994); Fawcett v. Bablitch, 962 F.2d 617, 618 (7th
Cir.1992); see also Isaac v. Grider 2000 WL 571959, at *4
(6th Cir.2000); Parks v. Hargett 1999 WL 157431, at *3 (10th
Cir.1999).).

The appellats breaking and entering indictments lacked
an essential element.(What the actual felony intended was.)
See Government of Virgin Islands v. Moolenaar, 133 F.3d 246
(C.A.3(Virgin Islands)1998). Moolenaar was indicted for
burglary. In the Virgin Lslands "the crime of Burglary in the

4

Second Degree requires that the breaking and entering be with

the intent to commit "some

offense."" Id at 248. "The Information charging Moolenaar

describes the offense Moolenaar intended to commit when

breaking and entering as "theft"." Id at 248. Now see Moolenaar

at page 249.

> "    We know of no authority, and Moolenaar cites
> none, that supports the Appellate Division's holding
> that a charge of burglary will be sufficient unless the
> crime that was intended is framed in the exact statutory
> language. As set forth by one of the leading
> commentators, "[f]ailure to allege the statutory
> elements will not be fatal provided that alternative
> langauge is used or that the essential elements are
> charged in the indictment by necessary implication."
> 24 Moore's Federal Practice, § 607.04[2][b][ii[ (3d
> ed. 1997).

> This is particularly true in the context of burglary
> when the issue centers on the language used to
> describe the offense intended in breaking and entering.
> Thus, for example, in United States v. Dyba, 554 F.2d
> 417, 419 (10th Cir), cert denied, 434 U.S. 830, 98
> S.Ct. 111, 54 L.Ed.2d 89 (1977), the indictment
> charged the defendant with "burglary of monies" as the
> underlying offense for a statute that criminalized entry
> into a bank with the intent to commit "any felony."
> The court held that although the correct term would
> have been "larceny of monies," the use of the term
> "burglary of monies" was sufficient because the term
> 'burglary' "imported an unlawful entry with intent to
> steal," and "provided the accused with adequate notice
> of the offense charged." Id.

> Similarly, in Johnson v. Turner, 429 F'2d 1152,
> 1154-55 (10th Cir.1970), a defendant who was
> convicted of grand larceny contended in a petition for
> habeas corpus that the information was constitutionally
> defective because it charged merely that the defendant
> "stole" a guitar and failed to identify the specific
> criminal statute alleged to have been violated. The
> court denied the petition, holding that the charge fully
> apprised the defendant of the nature of the charge and
> of the facts alleged by the prosecution. Id. at 1155.

> The authorities on which Moolenaar relies to contend

that the information did not give him sufficient notice
are not apposite. In Pemberton, 813 F.2d at 630, the
information charging Burglary in the Third Degree
alleged merely breaking and entering a building with
"intent to commit an offense therein." We held the
information was inadequate because it did not contain
an essential element of the offense and sufficiently
apprised the defendant of what he must be prepared to
meet. Id. at 632. To the same effect, In United States
v. Thomas, 444 F.2d 919 (D.C.Cir.1971), the court
held insufficient an indictment charging the defendant
with burglary that merely alleged that he entered a
dwelling "with intent to commit a criminal offense
therein." Id at 920. The court held that this language
was "impermissibly broad and categorical." Id at 922. "

It is clear, that the State of Massachusetts had a obligation

to inform the appellant, exactly what the intended felony was.

In argument (B), the appellant argued that he did not

receive adequate notice of the charges against him. Under

Russell, criminal charges must give a defendant adequate notice

of the charges in order to enable him to mount a defense. 369

U.S. at 763-64,   Fair notice is essential in criminal

prosecutions:

No priciple of procedural due process is more clearly
established than that notice of the specific charge and
a chance to be heard in a trial of the issues raised by
the charge, if desired, are among the constitutional
rights of every accused in a criminal proceeding in all
courts, state or federal.

Cole v. Arkansas, 333 U.S. 196 (1948); see also Jackson v.

Virginia, 443 U.S. 307, 314 (1979) ("[A] conviction upon a

charge not made ... constitutes a denial of due process.");

In re Oliver, 333 U.S. 257, 273 (1948) ("A person's right to

reasonable notice of a charge against him, and an opportunity

to be heard in his defense ... are basic in our system of

jurisprudence.") "The Due Process Clause of the Fourteenth

6

Amendment mandates that whatever charging method the state
employs must give the criminal defendant fair notice of the
charges against him to permit adequate preparation of his
defense." Valentine v. Konteh, supra, at 631-632, citing
Madden v. Tate, 1987 WL 44909, at *3 (6th Cir.1987).

The indictment, the lack of a responce to appellants
request for a bill of particulars, and even the evidence at
trial failed to apprise the appellant of what occurances
formed the bases of the criminal charges he faced. Compare
Valentine v. Konteh, supra at 634. See appellants objection
to Magistrates Report and Recommendation, at pages 8, 9.

As far as argument (E) is concerned, the appellants
position is the same as set out in his objection to the
Magistrates Report and Recommendations. See at pages 10, 11.

### MOTION FOR A DIRECTED VERDICT
### ARGUMENT (C)

The Court, after receiving the recommendation of the
Magistrate. Conducted a de novo review of the appellants
petition. Which as the appellant argued in his objection to
the Magistrates report and recommendation was the correct
standard, under First Ciruit precedent. Unfortunately, for
the appellant the Court considered the appellants petition
under the "Anti-Terrorism and Effective Death Penalty Act of
1996." The court cited to Fortini v. Murphy, 257 F.3d 39, 47
(1st Cir. 2001).

Fortini, on the same page goes on to state:
"AEDPA's strict standard of review only applies to a "claim

7

that was adjudicated on the merits in state court
proceedings." 28 U.S.C. § 2254(d). Here, the federal
claim was never addressed by the state courts. All
of the cases that have touched on this problem (none
is directly on point) assumes that the statute applies
only when the state court decided the federal issue.
... After all, AEDPA imposes a requirement of deference
to state court decisions, but we can hardly defer to
the state court on an issue that the state court did
not address. Cf. Williams v. Taylor, 529 U.S. 362,
402-06 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).          "

The appellant argued in his objection to the Magistrates
report and recommendations. See pages 1-6, that de novo review
was required because the state court never   answered the
appellants federal issue. Which the Court had to of agreed
with, or it would not have conducted a de novo review. Once
the Court made that decision, it was no longer required to
follow "AEDPA's" standard of review. As the Court in Fortini,
stated:

"After all, ADEPA imposes a requirement of deference
to state court decisions, but we can hardly defer to
the state court on an issue that the state court did
not address.                                          "

The Court applied the wrong standard of review, it was not
required to show any "deference" to the state courts decision.
Review of the petitions, underlying claims were de novo.

The appellant argued throughout the entire proceedings.
That he could not have possible committed the crime. The
witness that called the police, testified that she saw the
appellant go into the opposite sideyard of the house that was
alleged to have been broken into. That after a five minute
period the appellant was then seen exiting the side yard and
walking up the street. (Tr. 1:167-173) The home owner testified

that nothing was stolen. (Tr. 1:139) Now compare Dockins v.

Hines, 374 F.3d 935, 939-940 (C.A.10(Okla.)2004):

> "The evidence presented at trial was that Petitioner was
> found in a house that had been broken into approximately
> four minutes before the police arrived to investigate,
> and that Petitioner was apprehended as he attempted to
> flee out the broken glass window in the back door of the
> victim's home. None of the evidence presented at trial
> indicated, as Petitioner now claims, that he was invited
> to join strangers who hsad already broken into the home
> while Petitioner walked the streets insearch of warmth
> and shelter. Given Oklahoma law on "aiding and abetting"
> in the commission of crime, the prosecution needed to
> prove only that either Petitioner or his companion
> committed the actual "breaking," and we find no room for
> reasonable debate as to whether the evidence at trial
> was sufficient for a rational juror to be convinced of
> that fact beyond a reasonable doubt.
>
> The state's evidence of Petitioner's "intent to steal"
> was admittedly much thinner. The prosecution's argument
> on this point focused on two facts--that Petitioner
> attempted to flee from the police and that he and his
> accomplice apparently gained entry to the victim's home
> by smashing a window in the rear of the house. Whether
> the evidence--and reasonable inferences that might be
> drawn from it--ws sufficient to convince a rational
> juror beyond a reasonable doubt that Petitioner had the
> requisite intent to steal is a close question. Absent
> the deference for state court judgements we apply under
> AEDPA, we would readily concede that reasonable jurist
> could debate whether the OCCA's decision was incorrect.
> Since we incorperate AEDPA deference into our COA
> analysis, however, Petitioner cannot obtain a COA unless
> we find that reasonable jurist could debate whether the
> Oklahoma court's decision was not merely wrong but
> unreasonable, either as a determination of fact or as
> an application of clearly established federal law. Where
> the sufficiency of the evidence is as close a question
> as it is in this case, we cannot conclude that the
> reasonableness of the OCCA's judgement is faily debatable,
> and we therefore DNEY COA on Petitioner's sufficiency
> of the evidence claims.                                    "

The appellant throughout the state court proceedings, and

in his petition for writ of habeas corpus. Argued that the

trial judge, could not possible infer that the appellant had

the intent to commit larceny (or steal). The appellant left

the scene of the alleged breaking and entering of his own free will, nothing was "stolen." The Court could not possibly infer that the petitioner/appellant had the "intent," to "commit larceny." The appellants case is stronger than the Petitioner in Dockins v. Hines. And without the deference shown to state court decisions under Fortini v. Murphy, a COA should issue.

As far as argument (2) is concerned, if the appellant is given a COA as to argument (1)(C). Then he should also receive a COA as to argument (2). In support see Appellants objection to Magistrates Report and Recommendations, at pages 14-20.

Respectfully submitted,
by the Appellant,

Dated: March 3, 2006

Robert Pelletier, pro se
Souza-Baranowski Correctional Center
1 Harvard Road
P.O. Box 8000
Shirley, Massachusetts 01464-8000

## RECORD APPENDIX

1)    Indictment Number (98-2391)

2)    Indictment Number (98-2392)

3)    Petition/Appellants, Objection to Magistrates Report
      and Recommendation.

RA 1

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS

**SUPERIOR COURT**
**INDICTMENT NO: 98 2391**

## COMMONWEALTH

### VS.

### ROBERT PELLETIER

---

### INDICTMENT
### BREAKING AND ENTERING IN THE DAYTIME
### GENERAL LAWS CHAPTER 266, SECTION 18

---

At the Superior Court, begun and holden at SPRINGFIELD, within and for the COUNTY of HAMPDEN, on the first Tuesday of November 1998. The GRAND JURORS for the Commonwealth of Massachusetts on their oath present that:

### ROBERT PELLETIER

defendant herein, of HOLYOKE in the COUNTY of HAMPDEN, on or about October 9, 1998, at Holyoke in the COUNTY of HAMPDEN, did break and enter in the daytime the dwelling house of Luz Flores situated in said Holyoke, in said County, with intent therein to commit a felony.

_Ivener M. Pauffe_
Foreman of the Grand Jury

**A TRUE BILL**

_Ellen Beyer_
BA+   District Attorney

RETURN

HAMPDEN, ss On this _17th_ day of _November_ , 1998, this indictment was returned and presented to said Superior Court by the Grand Jury, and ordered to be filed and filed.

ATTEST: _Ivener C. Kinly_ Assistant Clerk

h       0 0 1

# COMMONWEALTH OF MASSACHUSETTS

RA 2

HAMPDEN, SS

SUPERIOR COURT
INDICTMENT NO: 98 2392

COMMONWEALTH

VS.

ROBERT PELLETIER

---

### INDICTMENT
### BREAKING AND ENTERING IN THE DAYTIME
### GENERAL LAWS CHAPTER 266, SECTION 18

---

At the Superior Court, begun and holden at SPRINGFIELD, within and for the COUNTY of HAMPDEN, on the first Tuesday of November 1998. The GRAND JURORS for the Commonwealth of Massachusetts on their oath present that:

### ROBERT PELLETIER

defendant herein, of HOLYOKE in the COUNTY of HAMPDEN, on or about October 9, 1998, at Holyoke in the COUNTY of HAMPDEN, did break and enter in the daytime the dwelling house of Luz Flores situated in said Holyoke, in said County, with intent therein to commit a felony.

A TRUE BILL

Foreman of the Grand Jury

District Attorney

RETURN

HAMPDEN, ss  On this _17th_ day of _November_ , 1998, this indictment was returned and presented to said Superior Court by the Grand Jury, and ordered to be filed and filed.

ATTEST: _____  Assistant Clerk

0 0 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT PELLETIER,<br>     Petitioner,<br><br>Vs.<br><br>LOIS RUSSO, SUPERINTENDENT,<br>     Respondent, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-30014-MAP

## PETITIONERS OBJECTION TO MAGISTRATES
## REPORT AND RECOMMENDATION

Now comes the Petitioner, Robert Pelletier, pro se. The petitioner would formally object to Magistrates report and recommendations in there entirety under the provisions of Rule 3(b), of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

**FACTUAL HISTORY:**

The Magistrate writes the following:

"Typically in section 2254 cases, the factual history is derived from the highest state court decision, and the facts contained therein are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). Here, however, the Appeals Court's decision contained only a smattering of facts. accordingly, following the parties lead, the court has considered the following facts from the briefs the parties filed with the Appeals Court, as summarized in Respondent's present menorandum of law. "

See Magistrates Report at page (3).

The Petitioner, in his cross-motion for summary disposition argued that review of petitioners, petition should be de novo.

As reasons for that argument, the petitioner argued that the
State court did not review the petitioners pleadings at all.
The Petitioner argued at page 2, the following:

> "A "determination of a factual issue made by a State court
> shall be presumed to be correct. The applicant shall have
> the burden of rebutting the presumption of correctness by
> clear and convincing evidence." 28 U.S.C. § 2254(e)(1).
> The "presumption of correctness is equally applicable when
> a state appellate court, as opposed to a state trial court,
> makes the finding of fact." <u>Sumner v. Mata</u>, 455 U.S. 591,
> 593 (1982).
>                                                                    "

The Petitioner then stated in the first paragraph on page 3, the
following:

> "Neither the trial court (judge) nor the Appeals Court, ever
> made any findings of fact in this matter. In fact, the only
> person that did make a finding of fact, was the attorney
> for the Commonwealth who wrote the "Commonwealth's
> Memoramdum of Law in Support of its Motion for Summary
> Disposition" (A.C. No. 03-P-1494). See respondents
> (<u>Supplemental Answer</u>) at ¶2.
>                                                                    "

The Petitioner never conceded, that the facts summarized by the
Commonwealth's attorney were correct. The Magistrates report
states at page 5, second paragraph the following sentence:
"Approximately five minutes later, Lux Flores, the owner of the
home, arrived at the scene." If the Magistrate had taken the
time to read the Petitions "Statement of the Facts" included
within petitioners appellate brief to the Appeals Court, and or,
the trial transcript that was included with the petitioners
motion for summary disposition. He would of realized that line
was incorrect. The relevancy of that line will become apparant
in the dicussion on the denial of the "Sufficiency of the
Evidence" argument. The Petitioner would also argue that the
"Factual History" recited by the Magistrate is adapted to fit

the Commonwealth's theory of the case. And is not a true an

accurate summarization of the "Factual History."

**STANDARD OF REVIEW:**

    The Magistrate writes:

"According to Respondent, the petition arises under
subsection (1) of 28 U.S.C. § 2254(d) which allows for
habeas relief if Petitioner can prove the "State court[s]
... adjudication" of his claims "was contrary to, or
involved an unreasonable application of, clearly established
Federal law. ... Petitioner, on the other hand, argues that
several of his arguments were not actually adjucated "on
the merits" by the Appeals Court and, therefore, a "de novo"
standard of review somehow applies to those claimes. See
Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (applying
de novo standard of review to "an issue that the state court
did not address").
    After scrutinizing the record, the court is convinced
that Petitioner, his arguments to the contrary, is simply
reasserting in his federal forum the "three claims" that
were, in fact, addressed by the Appeals Court: that "(1)
his first appellate attorney provided ineffective assistance
by not challenging the validity of the indictments; (2) the
evidence against him was insufficient; and (3) the prosecutors
closing argument was improper." Commonwealth v. Pelletier,
817 N.E.2d 339, 2004 WL 2495618, at *1, rev. denied, 820 N.E.
2d 258 (Mass. 2004). Accordingly, this court, like Respondent,
believes that the "AEDPA's ordinary standard for evaluating
state legal determinations" applies, i.e., the court must
"accept" the Appeals Court's legal rulings "unless [they are]
'contrary to, or involved an unreasonable application of
clearly established Federal law, as determined by the
Supreme Court.'" Fortini, 257 F.3d at 47 (quoting 28 U.S.C.
§ 2254(d)(1)  (See at pages 6 and 7.)             "

The Magistrate then goes on to describe the "contrary to" and the

"unreasonable application" standards. (See at pages 7 and 8.)

    In summation, the Magistrate  writes:

"Unfortunately, Petitioner never discusses the section 2254
(d)(1) standard. He merely reprodues the brief he submitted
to the Appeals Court, along with a short argument that a de
novo standard of review applies. This, in the court's
estimation, is a risky strategy. Section 2254(d)(1) places
the burden on Petition to demonstrate how the "adjudication"
of his claims by the "State court" -- here, the Appeals
Court's November 5, 2004 decision -- "was contrary to, or
involved an unreasonable application of, clearly established

federal law." See also Bell v. Cone, 535 U.S. 685, 693 (2002) (one purpose of AEDPA is "to prevent federal habeas retrials" )(citation and internal quotations marks omitted). Petitioner has not carried that burden. And having independently concidered the applicable standards, the court itself has determined that the Appeals Court's decision easily survives the requirement of section 2254(d)(1). The court also believes that the petition ought to be dismissed even under a de novo standard of review, should that standard somehow apply, because none of Petitioner's claims are meritorious.                   " (See at pages 8 and 9).

The Massachusetts Appeals Court issued a one page decision in the petitioners case. Commonwealth v. Pelletier, 62 Mass.App.Ct. 1109 (2004). In that decision the court discusses only two and one half of the five underlying claims to the petitioners ineffective assistance of appellate counsel claim. The court writes:

"Indictments. "[A] burglary indictment need not ... specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony." Commonwealth v. Willard, 53 Mass.App.Ct. 650, 656 (2002). We agree with the motion judge that the indictments were not infirm. Thus a motion to dismiss the indictments was foredoomed.

Sufficiency of the evidence.    The motion judge was well within his discretion to reject the defendant's challenge and conclude that the evidence was more than sufficient to prove guilt beyond a reasonable doubt. The neighbor who called the police saw the defendant exiting the subject house near high noon on the date in question. The front porch screen window had been cut; there were fresh pry marks by the rear door; and an interior door had been ripped off its hinges. When stopped by the police officers, the defendant had a screwdriver and knife in his pants pocket. It is settled law that circumstantial evidence is sufficient to sustain a guilty verdict. See e.g. Commonwealth v. Merola, 405 Mass. 529, 533 (1989).

Closing arguments.    The defendant accuses the prosecutor of making misstatements in her closing argument. We disagree. See Commonwealth v. Sliva, 401 Mass. 318, 329 (1987) (phrase "I suggest" is a rhetorical device [designed] to urge the jury to draw inferences from the evidence favorable to [the] case"). Furthermore, the judge directed the jurors to use their "common sence, good reasoning, and good judgement." In light of these instructions, the jurors would not have concluded that the prosecutor was suggesting that the

4

neighbor, Ms. Ferreira, somehow had the capacity to see
through the solid structure of the house and observe the
defendant standing on the far side, he says, vomiting.
The defendant has failed to show serious incompetancy,
inefficiency, or inattention on appellate counsel's part
that deprived him of an otherwise available, substantial
ground of defense in respect to a potential appellate
challenge to the prosecutor's closing. See Commonwealth
v. Saferian, 366 Mass. 89, 96 (1974). In short, even if
the judge credited the defendant's story about vomiting
there, was ample time and opportunity for the defendant
to break into the back of the house.                   "

The Petitioner, in his cross-motion for summary disposition

writes under the heading (A. Standard of Review for the District

Court). the following:

"The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") prohibits a federal court from granting an
application for a writ of habeas corpus with respect to a
claim adjudicated on the merits in state court unless that
adjudication resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court
of the United States. Williams v. Taylor, 529 U.S. 362, 399
(2000) (internal quotations omitted). However, "AEDPA's
strict standard of review only applies to a claim that was
adjudicated on the merits in state court proceedings."
Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001), cert
denied, 535 U.S. 1018 (2002); see also Ellsworth v. Warden,
333 F.3d 1, 6 (1st Cir. 2003) If a claim was not
adjudicated on the merits in a state court proceeding,
then the issue is reviewed de novo. Id.                "
(See at page 2).

The Massachusetts Appeals Court, in their one page decision

did not concider any of the petitioners federal claims. See

Fortini at page 47.

"AEDPA's strict standard of review only applies to a "claim
that was adjudicated on the merits in state court proceedings."
28 U.S.C. § 2254(d). Here, the federal claim was never
addressed by the state courts. All of the cases that have
touched on this problem (none is directly on point) assumes
that the statute applies only when the state court decided
the federal issue. ... After all, AEDPA imposes a requirement
of deference to state court decisions, but we can hardly
defer to the state court on an issue that the state court did
not address. Cf. Williams v. Taylor, 529 U.S. 362, 402-06

120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).                    "

Compare Allison v. Ficco, 388 F.3d 367, 369 (C.A.1(Mass.)2004)

("Because the state courts squarely addressed the federal

constitutional issue we engage in defferential and not de novo

review.") The Magistrates decision not to review de novo,

as the petitioner argued in his cross-motion for summary

disposition. Is contrary to settled First Circuit precedent.

The Magistrate writes "The court believes that the petition ought

to be dismissed even under a de novo standard of review, should

that standard somehow apply, because none of Petitioner's claims

are meritorious." See at page 9. The petitioner would question,

that if the court did not make a de novo review. How the court

would be able to make a determination that the petitioners claims

are unmeritorious. The petitioner would like to make one final

point before discussing the actual arguments. The petitioner

understands that the ineffective assistance of appellate counsel

claim would be reviewed under the "contrary to" or the "unreasonable

application" standards. The petitioners de novo argument goes to

the underlying claims within the ineffective claim.

Claim A.

> Appellate counsel failed to claim on two separate
> grounds that the defendant's pre-trial counsel was
> ineffective for not filing a pre-trial motion to
> dismiss the defendant's two separate breaking and
> entering indictments.

The Petitioners breaking and entering indictments were

identical, and stated as follows:

> "[Robert Pelletier] defendant herein, of Holyoke in the county
> of Hampden, on or about October 9, 1998, at Holyoke in the
> County of Hampden, did break and enter in the daytime the

6

dwelling house of Luz Flores situated in said Holyoke, in said County, with intent therein to commit a felony.    "

## Ground one, Double Jeopardy

The essence of the petitioners argument is that the identical indictment violates the Double Jeopardy Clause of the Fifth Amendment. In support the petitioner cited to the following Supreme Court decisions:

United States v. Dixon, 509 U.S. 688, 704 (1993); Ex parte Lange, 18 Wall. 163, 173 (1874); Schiro v. Farley, 510 U.S. 222, 229-230 (1994); Price v. Georgia, 398 U.S. 323, 326 (1970); Helvering v. Mitchell, 303 U.S. 391, 399 (1938); In re Snow, 120 U.S. 274 (1887) Brown v. Ohio, 432 U.S. 161, 169 (177).

The Massachusetts Appeals Court, did not issue a responce to the petitioners argument.

## Ground two, failure to state the intended felony, in the indictment

The petitioner argued, that under the Constitution of the United States, amendments five and six. That the state of Massachusetts is required to list every element of the offense in the indictment. The "intent to commit a felony" portion is an element of the offense and that by not listing the actual felony the indictment was infirm and counsel should of moved to dismiss it. The petitioner listed the Fifth and Sixth amendments as grounds and supported the argument with the following Supreme Court precedent:

Russell v. United States, 369 U.S. 749, 763-764 (1962); Hamling v. United States 418 U.S. 87, 117 (1974); Jones v. United States 526 U.S. 227, 230 (1999); In re Winship, 397 U.S. 358, 369 (1970).

7

The state of Massachusetts used Commonwealth v. Willard, 53
Mass.App.Ct. 650, 656 (2002). To state, that when charging a
defendant in a breaking and entering indictment. The state does
not have to include the actual felony. That if the defendant,
wants that information he should file a "bill of particulars."
The petitioner went through the history of the Willard decision
and categorically showed how it was mistakenly decided, and
violated not only Supreme Court precedent but the constitution
itself. The Massachusetts Appeals Court did not address the
petitioners federal question. See Fortini, at page 47.

## Claim B.

> **Appellate counsel failed to argue that the defendant
> was denied adequate notice of the charges against him
> where the breaking and entering indictments failed to
> specify the intended felony to be committed.**

The petitioners breaking and entering indictment were identical
and failed to inform the petitioner of exactly what felony, that it
was, he intended to commit. See infra at pages 6 and 7. The Appeals
Court and the Magistrate categorized this argument, as the same as
the preceding argument considering the violation of petitioners
constitutional rights under the double jeopardy clause and his
rights to plead an acquittal or conviction in bar of future
prosecution for the same offence. And the infirmity of the
indictment, for not listing all the elements of the offense as
required by the constitution.

The notice requirement, is a separate argument in itself.
The petitioner would freely admit that the two arguments are at
times intertwined. And that the petitioner used the same Supreme

8

Court precedent to support the foundation of both arguments. See Russell v. United States, 369 U.S. 749, 763-764 (1962); Hamling v. United States, 418 U.S. 87, 117 (1974).

Where this argument differs, is in the judicial history of Commonwealth v. Willard, 53 Mass.App.Ct. 650, 653 (2002). The Court in Willard cites to Commonwealth v. Porcher, 26 Mass.App.Ct. 517, 521 (1988). The Court in Porcher, in turn, relied upon Commonwealth v. Wainio, 1 Mass.App.Ct. 866 (1974). The Court in Wainio then relied upon Commonwealth v. Lewis, 346 Mass. 373, 377-378 (1963). For the proposition that if a defendant, "wished to be apprised of a particular felony intended to be committed ... he should have availed himself of the remedy ... of a motion for a bill of particulars." Wainio, at 867. The petitioner did file a "bill of particulars" requesting the "time, place, and manner for the above referenced matters." See record appendix, at page 32, attached to the petitioners Writ of Habeas Corpus. The state of Massachusetts never responded to the petitioners "bill of particulars." See record appendix, Hampden Superior Court, Docket Entry Sheet, pages 4-12. Also attached to petitioners Writ of Habeas Corpus. If the petitioner was not given notice, through the indictment nor through a requested bill of particulars. Then the petitioner was not given notice of the charges against him, in violation of the Constitution of the United States and also clearly established Supreme Court precedent.

The Massachusetts Appeals Court did not respond to this argument. Therefore, they did not address the petitioners federal question. See Fortini, at page 47.

9

Claim E.

> Appellate counsel failed in that he did not argue
> that the petitioners two breaking and entering
> indictment were impermissble and constructively
> amended and broadened by the trial judge during
> his instruction to the jury.

The Magistrate, like the Massachusetts Appeals Court, did
not adequately, or at all review this argument. Instead the
Magistrate and the Appeals Court, combined argument (A),(B), and
(D). Then both the Magistrate and the Appeals Court only answered
argument (A), without even deciding the Federal questions. The
petitioner will admit, that on the surface the three arguments
would seen to be connected. When the surface is broken, and the
underlying constitutional issues are examined. There is a
separate Federal issue involved in each separate argument.

An indictment was brought before the Grand Jury. That
indictment did not contain any explicit statement of conduct
that a person could infer that larceny was the intended felony
to be committed. The petitioner cites several cases in argument
(A) where the state charged individuals with crimes that charged
intent. In those crimes the indictment either contained a
statement with "the words of the statute itself" Hamling v.
United States, at 87, and also stated "to wit, [which] is to
make what follows an essential element of the offense." United
States v. Leichtnam, 948 F.2d 370, 377-78 (7th Cir.1991). Or,
indicted separately for the underlying felony See Commonwealth
v. Lauzier, 53 Mass.App.Ct. 626, 629 (2002); Commonwealth v.
Cruz, 430 Mass. 182, 189 (1999) ("Here there were separate
indictments on all potential underlying felony counts.)"

10

In argument (E) the petitioner specifically argued that
because the petitioner was never given notice of the intent
component of the indictment. That when the trial judge instructed
the jury that larceny formed the intent component. That
instruction constructively amended and broadened the petitioners
indictment. The petitioner supported the argument with several
Supreme Court decisions that are clear on the subject. See
United States v. Miller, 471 U.S. 130, 135 (1985); Stirone v.
United States, 361 U.S. 212, 216 (1960); Ex Parte Bain, 121 U.S.
1 (1887). The petitioner argued that the error is fatal. That
it is reversible "per se." Stirone at 216. The First Circuit is
in accord. See United States v. Fisher, 3 F.3d 456, 463 (C.A.1
(Mass. 1993) ("A constructive amendment is considered prejudicial
per se and grounds for reversal of a conviction."); Haines v.
Risley, 412 F.3d 285 n.4 (C.A.1(N.H.)2005) ("The case law
stemming from Stirone v. United States ..., has led a number of
circuits, including ours, to adopt such a per se theory for
certain deviations between what is charged in the indictment and
what is proved at trial.") case citation omitted).

The Massachusetts Appeals Court did not respond to this
argument. Therefore, they did not address the petitioners federal
question. See Fortini, at page 47.

Claim (D).

> Appellate counsel failed to argue several improper
> statements made by the prosecutor during her
> closing argument to the jury.

The only witness who could of saw the defendant's actions,
were the next door neighbor who called the police. Ms. Ferreira

11

testified for the Commonwealth, as follows:

> "(Q). Okay. Now, when you said that this man walked around
> to the back of the house, the path he took going around to
> the back of the house, would that have been the side closest
> to your house or furthest away? (A). Furthest. (Q). Okay.
> so he went around the side that -- near the fence? (A).
> Right. (Q). And you said that you were in your kitchen
> looking out the window? (A). [Witness nodding] (Q). What if
> anything, did you see? (A). Well, I can see their backyard,
> and I can see most of the cemetery on the other side. (Q).
> Okay. And you didn't see anything? (A). No. (TR. 1:71)      "

The prosecutor in her closing argument mistakes the evidence

twice:

> "[S]o I suggest to you if the defendant was simply on the
> side of the house vomiting because he didn't want to do
> this in front of the lady that she would -- I suggest to
> you quite possible have seen him." (TR. 2:19) Second,
> "she said once you get back to the cellar area, she cannot
> see." (TR. 2:19)                                            "

At this point the petitioner objects. The judge states in open

court, "Mr. Pelletier, it's inappropriate to object during the

closing argument. If you have an objection you can address it to

me after the arguments are completed." (TR. 2:20)

The prosecutor immediately repeats the following:

> "[B]ut the area she told you she couldn't see was right in
> the back cellar area and you heard the  defendant was back
> there for approximately five minutes." (TR. 2:20)

After the completion of the prosecutor's argument, the petitioner

renews his objection. The petitioner states that the prosecutor

mistated several facts. The trial judge replies:

> "that's -- that's a matter for the jury. Their recollection
> of the evidence, their recollection of the evidence will
> control there." (TR. 2:31

The petitioers  argument, cites to numerous state cases that

state what, and what cannot be done during closing argument. The

State argued one state case to suggest that the prosecutor is

allowed to suggest anything she wants. The second statement was
not even done under the "I suggest" theory. The petitioner
argued that it was impossible for him to commit the crime. The
petitioner is seen by the next door neighbor coming off the front
porch. He then goes to the opposite, or cemetery side of the
house. After a five minute period he comes back into site of the
neighbor, and walks up the street. The side of the house the
neighbor see's the petitioner enter, is the only side of the
house that isen't broken into or attempted to have been broken
into. The petitioners whole argument was that, it was impossible
for him to have committed the crime. Ms. Ferreira stated, "I can
see into their backyard." She was then asked by the prosecutor,
"And you didn't see anything? Ms. Ferreira answered, "No." If
the petitioners defense was that he couldn't have committed the
crime and the neighbor, Ms. Ferriera testify's that she didn't
see the petitioner at the site of the points of the actual
breakin. Then the prosecutors statement had no basis in the
evidence. The prosecutor opened the door for the jury to draw
an inference that had no basis to be drawn from. The trial judge
should of recognized the prejudicial effect on the petitioners
defense. And instructed the jury that the prosecutor was
mistaken and that they should exclude those statements from there
consideration.

The petitioner correctly cited to Donnelly v. DeChristoforo,
416 U.S. 637, 643 (1974) that the prosecutor's behavior "so
infected the trial with unfairness as to make the resulting
conviction a denial of due process." Id. 643. The Magistrate

13

writes "[p]ut differently, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Citing, Smith v. Phillips, 455 U.S. 209, 219 (1982). The question under federal law then is, was it fair to the petitioner, that the prosecutor put him at the entry points of the breakin. Misstating her own prosecution witness. Who in fact stated, that she did not see the petitioner at any of the entry points during the five minute period that the State alleges the crime took place.

The State of Massachusetts did not address the petitioners federal question. See Fortini, at page 47.

**Claim (C).**

> **Appellate counsel failed to argue that the trial court erred, when it denied the defendant's motion for a required finding of not guilty at the close of the commonwealth's case and also at the close of all the evidence.**

In the petitioners argument to the Massachusetts courts, he identified the correct federal precedent:

> "The test for deciding whether a motion for a required finding was properly denied is "whether, after viewing the evidence (and fair inferences therefrom) in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979), (emphasis in original).                           "

See Hurtado v. Tucker, 245 F.3d 7, 12 (C.A.1(Mass.)2001) (Commonwealth v. Latimore, applying test articulated by the Supreme Court in Jackson v. Virginia) internal citations omitted).

14

The Commonwealth in its memorandum of law in support of its motion for summary disposition, wrote the following:

> "The motion judge summarily rejected the defendant's sufficiency argument, (Add./13, 14 ["The evidence was sufficient to support the verdict"]), and this Court should as well. The neighbor who called the police saw the defendant exiting the front porch of 63 Sycamore Street at around noontime on October 9, 1998. (TR. I/67-68, 73). The owner of that house, Luz Flores, had locked her home when she left for work that morning. (Tr. I/128-129). The front porch screen window had been cut, there were fresh pry marks by the rear door, and an interior door had been ripped off its hinges. (Tr. I/86-90, 110-120). The police spotted the defendant emerging from the yard at 40 Sycamore Street. (Tr.I/80). He had a screwdriver and knife in his pants pocket. (Tr. I/83). This evidence was more than sufficient. "

Now compare with the Appeals Court decision, infra at page 4. The Appeals Court essentially wrote their decision off of the Commonwealth's motion. The Court cites to one case, Commonwealth v. Merola, 405 Mass. 529, 533 (1989). The court stated: (It is settled law that circumstantial evidence is sufficient to sustain a guilty verdict.) At know time did the Appeals Court make an analysis of the facts. And then put those facts and possible inferences to every element of the breaking and entering indictments. Nevermind, that they didn't even mention the standards of review.

**Testimony of Patricia Ferreira**

> "(Q). Okay. Now, when you said that this man walked around to the back of the house, the path he took going around to the back of the house, would that have been the side closest to your house or fuethest away? (A). Furthest. (Q). Okay. so he went around the side that -- near the fence? (A). Right. (Q). And you said that you were in your kitchen looking out the window? (A). [Witness nodding] (Q). What if anything, did you see? (A). Well, I can see their backyard, and I can see most of the cemetry on the other side. (Q). Okay. And you didn't see anything? (A). No. (TR. 1:71) "

15

On cross-examination by the petitioner, Ms. Ferreira testifies

as follows:

> "(Q). This the back of Ms. Flores's house? (A). Yes. (Q).
> At any point did you see the defendant? (A). No. (Q). Now
> in a five-minute period you didn't see the defendant in
> any of these points? (A). No, I did not. (Q). Now, you
> were suspicious of the defendant, were you not? (A). Yes,
> I was. (Q). This window here they allege I broke through,
> the defendant broke through, you didn't see him at that
> window? (A). No. (Q). Did you see him go on the porch?
> (Q). No, I did not. (Q). No. When the defendant came off
> the front porch, did he look at you? (A). Yes. (Q). So
> he seen you and you seen him? (A). Yes. (Q). And he walked
> out. Now, when he walked back, did he see you again? (A).
> Yes.   (TR. 1:76-77)                                    "

**Testimony of Gary Wagner**

On cross-examination Officer Wagner testified as follows:

> " (Q). How long was it from the moment you stopped the
> defendant untill the defendant was brought down to what
> -- is it 63 Sycamore? (A). I'd say about ten minutes.
> (Q). So you went on the front porch and -- can I use
> your photo? (Q). And is this the screen, the cut? (A).
> Yup, that's the outer screen. There's a little slice
> over here. (Q). Is that a typical cut for a burglary?
> Ms. Pisano: Objection. The Court: Sustained. (Q). All
> right. You came off the porch, you went between Mrs.
> Ferreira's house and Mrs. Flores house; is that correct?
> (A). Yes, I did. (Q). What did you observe on the way
> around the house? (A). At that time nothing. (Q). So you
> didn't observe this window here, the screen pulled up and
> the window pushed in? (A). I didn't, no. (Q). But you
> walked by it. (A). Yah.
>
> (Q). Now, this is the back door, right, that was entered
> through the cellar; is that not correct? (A). I believe it
> was, yes. (Q). Now, these stairs, they jet out how far,
> because you can tell the railing here is flush with the
> house -- (A). Yes, and -- (Q). -- so these stairs must stick
> out -- (A). They come out. (Q). -- 4 feet, 5 feet? (A).
> about, yah, that's your standard. (Q). So when you walked
> behind here with your peripheral vision, you didn't see that
> cellar door? (A). No. (Q). This a police report that says
> the incident occurred at 11:26? (A). That's correct. That's
> the time of the call. (Q). So it didn't take you what,
> minute to respond? (A). I'd say about a minute. (Q). And it
> took 10 minutes to bring the defendant from the top of
> Sycamore down to the botton of Sycamore. (A). About that.
> Yes. (Q). The defendant was booked in at 12:18. (A). That's

16

about right. Yes, I did my report at 12:43 (TR. 1:94-104)"

**Testimony of Lonnie Westbrook**

On cross-examination by the petitioner, Officer Westbrook testified as follows:

"(Q). At 40 Sycamore Street you checked the house for damage?
(A). Signs of a break. (Q). Were there any signs? (A). No.
(Q). When the defendant was brought to 63 Sycamore, you went
immediately afterwards? (A). You mean when you were brought
to 63? (Q). Yah. (A). I don't know if immediately, I went
some time during that, yes. (Q). And how long were you
there? (A). 10, 15 minutes. I can't recall exactly. (Q). Did
you encircle the house? (A). Yes.I walked -- I walked in
in there also. The front of the porch. (Q). What damage did
you find? (A). I didn't find any damage there.          "
(TR. 1:106-107)

**Testimony of Jan Saj**

On direct examination by the prosecutor, Officer Saj testified as follows:

"(Q). Okay. And if you recall what were the areas where you
personally witnessed some damage to the house? (A). the
first area was from the sidewalk area, was, like, a  front
porch, enclosed porch. And then as you walked in, there was
a screen that had a tear in it, like a hole, like a minor
gap, not to big. (Q). Okay. And then did you walk around
the house? (A). Yes, ma'am, to the southern part of the
house which is face-to-face with the witnesse's home. (Q).
Well, I'm going to ask you to draw your attention to the
chalkboard. You see where Number 65 and 63? (Q). Yes, ma'ma.
(Q). And if that's Sycamore Street right at the top of the
chalkboard, where would this -- when you said you walked
around the side of the house. (A). Okay, The first -- the
first area where -- this is, like, an enclosed -- can I
draw on this? (Q). That would be fine. (A). The first area
where there was screen damage was around here. The second
location as we walked around because this is the sidewalk
area, this is the screen, there was a window that was open
and a screen pushed in or vice versa. Excuse me. (Q). Why
don't you explain what was there? (A). There was, like, a
-- a waist leval high window; and it had a screen on it. I
forget which one was pushed in but that was -- that was
also tampered with. That was about, you know, you could
almost step into it or climb into it. That was -- (Q).
Would that be going into what part of the house, do you
(A). I think that's into the basement. (Q). All right.(A).
And this ᴛ-- the witness -- the lady that we spoke with.

17

(Q). Miss Ferreira? (A). After that -- right. She lives in this house, that's what I'm saying, it's face-to-face with with this house. Now, there's a set of stairs that go up into the entrance of the house, the first leval, and there was a door here that had pry marks where the piston meets the -- meets the side of the wood, and there were pry marks at the -- at the lock area above the staircase, up in that enclosed little porch area that you walked in order to get upstairs. Beyond that, as you walked around, this area here has, like, a -- had, like, a door, like, a panel door, that was -- pry marks were evident on the the side also, like, where the door would meet the -- the area -- there would be, like, a pry mark there, so as you open that, that was indicative of being forced. (Q). Was the door -- was that -- you said that kind of plywood door, was that open when you saw it? (A). It was shut, but it was evident that it was -- that it was tampered with because of that pry mark -- (Q). Are you certain that was shut when you saw it? (A). I'm not a hundred percent sure, but I'm pretty sure it was almost closed. (Q). Was Miss Flores with you when you witnessed this for the first time? (A). Oh, when she came with me -- excuse me. For the first time, it was shut. When I was with her, I -- I -- it was -- I left it open.                 "
(TR. 1:110-113)

**Testimony of Luz Flores**

On cross-examination by the petitioner, Miss Flores testified as follows:

"(Q). Just one other thing. Was anything stolen? (A). No. there wasn't anything stolen.

The first question to be answered, is de novo review is it required under the circumstances of this case. The petitioner would argue, that they are. Even if the Court would decide that AEDPA's standard is the correct standard of review. The petitioners  argument would still prevail. The First Circuit has set the precedent for sufficiency of the evidence claims in its decision, Hurtado v. Tucker,245 F.3d 7 (C.A.1(Mass.)2001). Hurtado suggested the following guidelines to be used in making the evaluation of objective unreasonableness under § 2254(d)(1): (1) The focus of the inquiry is on the state court decision;

The state court did not make a decision as to the federal aspect of petitioners argument.

(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to the "totality of the evidence" in evaluating the state court's decision;

The petitioer would argue that the Magistrate, did not look into the "totlity of the evidence" in evaluating the state court's decision.

(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

The state court did not consider any portion of the petitioners argument. ( Inferences as to intent).

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable;

The state court did not consider any aspect of the petitioners argument. Therefore, they could not have possible applied the appropriate standard to petitioners argument.

Conclusion

If the court considers the testimony of the commonwealth's witnesses objectively. The court would find that the petitioner could not have possible committed the crime. It was impossible for the petitioner to commit the breakin's also there was no

19

Felony committed. That is why the felony portion was left off of the indictment  The commonwealth did not have a felony, so they left that portion blank. A breaking and entering charge has three elements. A breaking, a entering, and a intent to commit a felony. The commonwealth's evidence was lacking. The petitioner should of been acquited by the court. The Appeals Court also should have entered a judgement of acquital on the record and immediately released the petitioner on double jeopardy grounds. See argument (2) , citing Monge v. California, 524 U.S. 721 (1998); Burks v. United States, 437 U.S. 1, 18 (1978); Samlis v. Pennsylvania, 476 U.S. 140, 142 (1986).

The petitioner would ask, that the District Court Judge, disregard the Magistrates recommendations. And that the Court conduct a "de novo" review of the petitioners, petition.


                              Respectfully submitted,
                              by the petitioner,



Dated: January 31, 2006        *Robert Pelletier*
                              Robert Pelletier, pro se
                              Souza-Baranowski Correctional Center
                              Harvard Road
                              P.O. Box 8000
                              Shirley, Massachusetts 01464-8000



                              20

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the enclosed documents were served upon the Assistent Attorney General, Annette C. Benedetto, by first class mail, postage pre-paid on March 3, 2006.

Annette C. Benedetto
Assistent Attorney General
Criminal Bureau
One Ashburton Place
Boston, Ma 02108

Robert Pelletier, pro se
Souza-Baranowski Correctional Center
1 Harvard Road
P.O. Box 8000
Shirley, Massachusetts 01464-8000